803 F.2d 881
 15 Bankr.Ct.Dec. 620, Bankr. L. Rep. P 71,508
 In re ERIE LACKAWANNA RAILWAY COMPANY, Debtor.
ERIE LACKAWANNA RAILWAY COMPANY, Petitioner-Appellee,
v.
John HENNING; Victor LaScala, (85-3588), Consolidated Rail
Corporation, (85- 3610,) Respondents-Appellants.
 Nos. 85-3588, 85-3610.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 31, 1986.
Decided Oct. 21, 1986.
Rehearing and Rehearing En Banc Denied Jan. 6, 1987.
 
 Robert J.F. Brobyn, Brobyn & Forceno, J. Michael Farrell, Philadelphia, Pa., for John Henning and Victor LaScala.
 Howard W. Goldstein (argued), Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for Erie Lackawanna Ry. Corp.
 Ralph G. Wellington (argued), Margaret S. Woodruff, Bonnie R. MacDougal, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Gary D. Bullock, Cincinnati, Ohio, for Consolidated Rail Corp.
 Before KEITH and GUY, Circuit Judges; and BALLANTINE,* District Judge.
 KEITH, Circuit Judge.
 
 
 1
 Appellants, Consolidated Rail Corporation (Conrail), John Henning and Victor LaScala, appeal the district court's June 18, 1985, order enjoining their asbestos-related claims against Erie Lackawanna Railway Company (Debtor). The key issue on appeal is whether to construe the Debtor's restructuring pursuant to Section 77 of the Bankruptcy Act of 1898, formerly 11 U.S.C. Sec. 205, in conjunction with the Regional Rail Reorganization Act ("Rail Act") (as amended 45 U.S.C. Sec. 701 et seq.) as a reorganization or a liquidation. The "new" company emerging from the restructuring was Erie Lackawanna, Inc. Appellants contend the restructuring was essentially a traditional reorganization, which should not insulate Erie Lackawanna, Inc. from post-reorganization claims. A "straight" liquidation, however, would preclude claims through the dissolution of the Debtor company. We hold that the restructuring of Debtor was more in the nature of a liquidation than reorganization.[1] Moreover, the nature of the restructuring of Debtor, in which general unsecured creditors became shareholders of Erie Lackawanna, Inc., mitigates against holding Erie Lackawanna, Inc. liable on any claims. For the reasons discussed below, the decision of the district court is affirmed.
 
 I.
 BACKGROUND
 
 2
 Section 77 of the Bankruptcy Act[2] was supplemented in 1973 by the Rail Act to confront and accommodate the existing crisis of the northeast railroads, including the Debtor. The Rail Act was promulgated by Congress to facilitate the reorganization of these railroads into a single viable system to be operated by Conrail. Thus, we are dealing with a "hybrid" proceeding in which we must consider the interaction of Section 77 with the Rail Act.
 
 
 3
 Pursuant to the Rail Act on March 30, 1976, the Debtor ceased all rail operations and shortly thereafter the bulk of its rail properties were conveyed to Conrail, thereby concluding the Debtor's tenure as an operating railroad. Subsequent to this conveyance, the Debtor's limited resources precluded its reorganization as an ongoing business entity. Its Final Plan of Reorganization evolved, pursuant to Section 77, as a "liquidating" plan consistent with the Rail Act, which provided that the bankruptcy court:
 
 
 4
 shall proceed to reorganize or liquidate such railroad in reorganization pursuant to Section 77 on such terms as the court deems just and reasonable, or pursuant to any other provisions of the Bankruptcy Act, if the court finds that such action would be in the best interests of such estate.
 
 
 5
 45 U.S.C. Sec. 791(b)(4).
 
 
 6
 During the intervening ten-year period between June of 1972, (when Debtor originally filed for bankruptcy under Section 77) and November of 1982, the parties proceeded to readjust the entire financial structure of the Debtor. The rights of creditors and security holders were materially modified and altered so as to best serve all interested parties including the Debtor, through the formulation of a plan that was fair and equitable to all classes of creditors.
 
 
 7
 A reorganization plan was approved by the district court in July, 1982, characterized as a "liquidating plan of reorganization". Under the Plan, the claims of priority and secured creditors were satisfied in full by the payment of cash. The general unsecured creditors were issued new Erie common stock in satisfaction of their claims. These creditors received approximately $52.00 per share in satisfaction for $100.00 of allowed claim. The majority of the Board of Directors of Erie Lackawanna Inc. was composed of those general unsecured creditors who received shares. As stated in the Plan of Reorganization, "The general program of activities to be carried on by the Reorganized Company will be to liquidate its remaining assets as expeditiously as practicable...." However, the Plan had an "escape clause" in which liquidation could be avoided by a 75% vote of the shareholders, in which case "the Reorganized Company, in lieu of liquidation, may continue in operation for such business purposes as the holders of the Capital Stock may determine...." Thus, the new reorganized Erie appears to be a corporation of the creditors, by the creditors and for the creditors.
 
 
 8
 The court-approved plan of reorganization was consummated by a final decree of discharge on November 30, 1982. Section 3.04 of the Consummation Order provided, in pertinent part, that:
 
 
 9
 The Debtor and the Debtor's Trustees shall, as of the Consummation Date, be discharged and released forever from
 
 
 10
 (a) All obligations, debts, liabilities and claims against the Debtor, whether or not filed or presented, whether or not approved, acknowledged or allowed in these proceedings and whether or not provable in bankruptcy, including without limitation all claims assumed or guaranteed by the Debtor or enforceable against the property of the Debtor;
 
 
 11
 Paragraph 3 of the order permanently enjoined all persons and entities from prosecuting any action against Erie on account of any claim against the Debtor, except as permitted in the Plan.
 
 
 12
 Appellants Henning and LaScala filed actions in the United States District Court for the Eastern District of Pennsylvania under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. Secs. 51-60, to recover for asbestos-related injuries that they alleged had been caused by asbestos exposure during their railroad employment. The injuries had not become manifest, and thus their actions had not been filed, until after the consummation of Debtor's reorganization proceeding. Other former Erie Lackawanna Railway (Debtor) employees who manifested symptoms of latent occupational injuries after the consummation of Debtor's reorganization, sued Conrail for asbestos-related injuries in the United States District Court for the Western District of New York and the Superior Court of New Jersey for Hudson County. Conrail, in turn, filed third-party claims to recover contribution or indemnity from the reorganized Erie Lackawanna, Inc. Conrail also filed a third-party action against Erie Lackawanna, Inc., for contribution or indemnity in a case pending in the New York Supreme Court, Albany County, in which Conrail was sued after the consummation of Erie's reorganization for costs of cleaning up a petroleum leak on property previously owned by the Erie Lackawanna Railway.
 
 
 13
 Erie Lackawanna, Inc., petitioned the United States District Court for the Northern District of Ohio, which had presided over its bankruptcy reorganization, for a declaration that the claims of Mr. Henning, Mr. LaScala, and Conrail were discharged in its reorganization, and asked the court to enjoin the prosecution of their claims. The Honorable Robert Krupansky, who presided over Erie's reorganization, sitting by designation in the district court for the Northern District of Ohio, granted Erie's petition for declaratory and injunctive relief. It is from this order appellants appeal.
 
 II.
 DISCUSSION
 
 14
 The central issue is whether Erie's bankruptcy proceeding--in which Erie Lackawanna Railway was restructured into Erie Lackawanna Inc.--should be construed as a "liquidation" or "reorganization". If Erie underwent a "straight" liquidation, then it is clear appellants' claims could not ensue: there would be no company left which suit could be brought against. Conversely, if the present restructuring should be characterized as a conventional reorganization, then it is arguable that claims could be brought.
 
 
 15
 Appellants argue that Debtor Erie Lackawanna Railway's bankruptcy proceeding was a reorganization in both form and substance, and that accordingly Debtor should not be able to escape its liabilities in perpetuity. Appellees argue that Debtor's restructuring was more similar to a liquidation, and therefore appellants' claims were properly barred. Due to the unique facutal-legal aspects of this case, we find the "reorganization" vs. "liquidation" analysis somewhat facile. Indeed, in the instant case we are dealing with a "hybrid" reorganization-liquidation which cannot easily be pigeon-holed for analysis.
 
 
 16
 The present bankruptcy restructuring was conducted pursuant to the Rail Act of 1973. The Act "does not supersede Sec. 77, but merely supplements the reorganization provisions therein...." Collier on Bankruptcy, p 77.02 at 475 (14th ed. 1985). Section 77 of the Bankruptcy Act only deals with reorganization, with the purpose that "the reorganized road shall be a living, not a dying, railroad enterprise." Van Schaick v. McCarthy, 116 F.2d 987 (10th Cir.1941). In contrast, the Rail Act specifically contemplates liquidation, the antithesis of reorganization, as an alternative. Section 791(b)(4) provides that the district court, supervising a bankruptcy:
 
 
 17
 shall proceed to reorganize or liquidate such railroad in reorganization pursuant to such Section 77 on such terms as the court deems just and reasonable, or pursuant to any other provisions of the Bankruptcy Act (11 U.S.C.A. Sec. 1 et seq.), if the court finds that such action would be in the best interest of such estate. (Emphasis added)
 
 
 18
 Paradoxical as it may seem, the Rail Act condones liquidation pursuant to a reorganization statute (i.e. Sec. 77).[3] The facts of this case defy a simplistic "reorganization vs. liquidation" dichotomy. The Plan provided for a reorganization for the purpose of liquidation. However, there was an "escape clause" whereby a 75% vote of the shareholders could rescind the liquidation provision in favor of a continued business existence. In February of 1983, Erie Lackawanna, Inc.'s Board of Directors unanimously proposed continued existence over liquidation. The issue therefore arises whether the adoption of such a proposal transforms the liquidation into a reorganization.
 
 
 19
 An analysis of the underlying realities of this case, rather than fixating on semantic labels (i.e. reorganization or liquidation), convinces us that Debtor's restructuring should be viewed more as a liquidation, thereby precluding appellants' claims. Debtor's restructuring cannot be construed as a standard Sec. 77 reorganization whose purpose is "[B]y financial restructuring to put back into operation a going concern. And [to] preserve an ongoing railroad in the public interest." Baker v. Gold Seal Liquors, 417 U.S. 467, 470-71, 94 S.Ct. 2504, 2506-07, 41 L.Ed.2d 243 (1974). The restructuring of Erie was the antithesis of preserving a going concern: Erie Lackawanna Railway transferred the bulk of its rail properties to Conrail. Erie as a railroad company has henceforth ceased to exist. Accordingly, appellants' contention that "Erie is a reorganized company like any other reorganized company" is false.
 
 
 20
 In practical terms, Erie's restructuring was similar to a liquidation; the debtor's assets were used to satisfy the claims of creditors, and debtor's previous business (operating a railway line) ceased to exist. All that remained were the non-rail assets. There is no question that if the district court ordered a traditional "straight" liquidation, that appellants' claims could not ensue. Rather, the district court, pursuant to the flexibility the Rail Act provides,[4] fashioned a restructuring that maximized the economic interests of all parties involved. Appellants were no worse off than under a straight liquidation. Moreover, under the Plan it is conceivable that the general unsecured creditors, who received Erie Lackawanna, Inc. stock, may be able to recoup their economic loss. These creditors received approximately 52cents of new stock for every dollar they claimed. By leaving the bare bones of Erie intact, and by providing for the possibility of Erie Lackawanna, Inc.'s continued business existence, these creditors may be able to come out whole.
 
 
 21
 If a straight liquidation was ordered, nothing would prohibit the unsecured creditors from embarking on a new business enterprise with the funds they received, without the worry of a lawsuit. The district court's Plan of Reorganization merely gave the unsecured creditors a vehicle, in the form of Erie Lackawanna Inc., for pursuing the maximization of their economic interests. Moreover, it simultaneously gave those unsecured creditors, who needed cash quickly, the opportunity to sell their shares of Erie Lackawanna, Inc. stock on the market.
 
 
 22
 Appellants are not without remedy for their alleged injuries. Appellants are free to bring suit against the asbestos manufacturers and installers. Subjecting the unsecured creditors to massive liability, when appellants have other avenues of redress, would be palpably unjust.
 
 
 23
 Affirmed.
 
 
 
 *
 Honorable Thomas A. Ballantine, Jr., United States District Court for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Accordingly, we need not reach the issue of whether appellant's claims arose before the bankruptcy Consummation Date of November 30, 1982, which discharged pre-reorganization claims against the Debtor. We will not address the issue whether to follow Schweitzer v. Consolidated Rail Corp., 758 F.2d 936 (3d Cir) cert. denied, --- U.S. ----, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), which held that an asbestos related personal injury action, had not manifested itself prior to the Consummation Date (although the injury occurred prior to bankruptcy) of the employer's reorganization in bankruptcy was not a claim dischargeable under the consummation plan. Schweitzer held that such a claim arises only when the injury manifests itself
 
 
 [2]
 On June 4, 1972, Debtor filed for reorganization pursuant to Section 77 of the Bankruptcy Act which was directed exclusively to railroad reorganizations
 
 
 [3]
 This "paradox" may be more apparent than real. Anderson & Wright, Liquidating Plans of Reorganization, 56 Am.Bankr.L.J. 29-30 (1982) states that "since approximately 1944 there has been a clear movement by courts to permit liquidations to be effectuated in reorganization proceedings. This judicial movement under the old Bankruptcy Act has culminated in the enactment of the new Bankruptcy Code, which contains certain enabling sections allowing liquidations as part of a reorganization proceeding."
 
 
 [4]
 Section 791(b)(4) empowers the district court to reorganize or liquidate on such terms as the court deems just and reasonable. An examination of the legislative history or case law does not explicate this language. We interpret it to give the district court flexibility in fashioning reorganizations: flexibility in the sense that the district judge need not be pigeon-holed in ordering a liquidation as opposed to a reorganization, but rather can devise "hybrid" reorganization-liquidations, which he deems "just and reasonable."