In re GRYPHON AT THE STONE MAN-
SION, INC., d/b/a Erik Lewis Global and
d/b/a Wanner Van Helden, Debtor.

GRYPHON AT THE STONE MANSION,
INC., d/b/a Erik Lewis Global and d/b/a
Wanner Van Helden, Movant,

v.

UNITED STATES TRUSTEE,
Respondent.

Bankruptcy No. 93–22807 JKF.
Motion No. DJG–11.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 22, 1997.

Daniel J. Gates, Warrendale, for Debtor.

Stephen I. Goldring, Senior Assistant United States Trustee, for the United States Trustee.

## MEMORANDUM OPINION

Bankruptcy Judge JUDITH K. FITZGERALD for the Court en banc with Chief Judge BERNARD MARKOVITZ and Judges WARREN W. BENTZ, M. BRUCE McCULLOUGH, and JOSEPH L. COSETTI.

The matter before the court is Debtor's objection to the claim of the United States Trustee for post-confirmation quarterly fees

pursuant to 28 U.S.C. § 1930(a)(6), as amended on January 26, 1996, Pub.L. No. 104–99, sec. 211, 1996 U.S.C.C.A.N. (110 Stat.) 26, 37–38, and on September 30, 1996, Pub.L. 104–208, 110 Stat. 3009. The United States Trustee has objected to entry of a final decree in various cases in which plans were confirmed prior to the January enactment because the post-confirmation fee created in that statute has not been paid. A hearing was held, *en banc*, on October 23, 1996. For the reasons which follow, we conclude that the United States Trustee's claim is not enforceable in bankruptcy in cases with plans confirmed before enactment of the amendment when the plan has been substantially consummated. Accordingly, the United States Trustee's objection to entry of a final decree will be overruled. Our ruling applies only to chapter 11 cases in which the plan was confirmed prior to enactment of the amendment to 28 U.S.C. § 1930. We do not address the impact of the fee upon any chapter 11 case in which a plan was not confirmed prior to the enactment of the amendment.

Prior to January 26, 1996, 28 U.S.C. § 1930(a)(6) provided that a quarterly fee was to be paid to the United States Trustee in each chapter 11 case until a plan was confirmed or the case was converted or dismissed, whichever occurred first. On January 26, 1996, the section was amended to delete the reference to plan confirmation and to require that the quarterly fee be paid post-confirmation until the case was converted or dismissed.[1] Pub.L. No. 104–99, sec. 211, 1996 U.S.C.C.A.N. (110 Stat.) 26, 37–38.[2] In attempting to apply the amendment, courts divided over the question of whether it affected cases in which a plan had already been confirmed before the date of enactment. On September 30, 1996, the President signed into law a clarifying amendment which pro-

---

1. Prior to January 26, 1996, § 1930 provided, in pertinent part,
    (a) … the parties commencing a case under title 11 shall pay to the clerk … the following filing fees: … (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee … until a plan is confirmed or the case is converted or dismissed, whichever occurs first.
    The January, 1996, amendment deleted the words "a plan is confirmed or".

2. The date of enactment of the amendment was January 26, 1996. However, the statute set the effective date as follows: "[n]otwithstanding any other provisions of law, the fees under 28 U.S.C. 1930(a)(6) shall accrue and be payable from and after January 27, 1996, … regardless of confirmation status of their plans". 104th Cong., 2nd Sess., 1996 WL 497064 at WL page 279, S.Rep. 104–353.

vided that the post-confirmation fee is owed "in all cases (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans". P.L. 104–208, 110 Stat. 3009 (September 30, 1996).

### Facts

When the court and the Assistant United States Trustee for this district realized that the United States Trustee's objections to the entry of final decrees on the basis of nonpayment of the post-confirmation fee would affect nearly 80[3] open chapter 11 cases with plans that had been confirmed before the amendment's enactment, judicial economy seemed best served by hearing the issues *en banc*. Several of the affected reorganized entities elected to pay the fee and those cases have been closed. The remaining cases fit into a variety of categories. The lead case, *Gryphon at the Stone Mansion, Inc.*, represents a confirmed plan of liquidation. The assets of *Gryphon* were sold during the chapter 11. The reorganized debtor collects payments from the buyer and distributes them to creditors in accordance with the plan. To afford reorganized debtors with different circumstances the opportunity to supplement the argument, this court sent notice to all affected debtors, creditors and parties in interest, established a briefing and argument schedule, and held the argument. No one but lead counsel for debtors and the United States Trustee filed pleadings or briefs or argued. Thus, we deal with the remaining open chapter 11 cases in the context of the issues and arguments presented by lead counsel and the United States Trustee.

### Jurisdiction

■ We first examine the question of whether the bankruptcy court has jurisdiction to grant the United States Trustee's request to enforce its claim for post-confirmation fees. The jurisdiction of the bankruptcy court after confirmation of a chapter 11 plan is "normally limited 'to matters concerning the implementation or execution of a confirmed plan' ". *In re Allegheny International, Inc.*, 954 F.2d 167, 169, n. 1 (3d Cir.1992) (citing *Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228, 233 (4th Cir.1987)). The court's post-confirmation jurisdiction is limited to ensuring that the terms of the plan are carried out.[4] *See* 11 U.S.C. § 1142. Section 1142(b) gives the bankruptcy court authority to direct actions necessary for consummation of a confirmed plan. *In re Erie Hilton Joint Venture*, 137 B.R. 165, 170 (Bankr.W.D.Pa.1992). As to other matters, jurisdiction must be expressly reserved. *See e.g. In re Insulfoams, Inc.*, 184 B.R. 694, 701 (Bankr.W.D.Pa.1995), *aff'd* 104 F.3d 547 (3d Cir.1997), *citing In re Johns–Manville Corp.*, 7 F.3d 32, 34 (2d Cir.1993).

■ Furthermore, "post-confirmation jurisdiction exists to protect and effect the provisions of the confirmation order, to prevent interference with the execution of the plan, or to otherwise aid in its operation." *In re Insulfoams*, 184 B.R. at 701, *citing In re Haws*, 158 B.R. 965, 969 (Bankr.S.D.Tex. 1993); *Goodman v. Phillip R. Curtis Enterprises*, 809 F.2d 228, 232 (4th Cir.1987); *Pennsylvania Companies, Inc. v. Stone (In re Greenley Energy Holdings of Pa.)*, 110 B.R. 173, 180 (Bankr.E.D.Pa.1990). *Accord In re Jewelcor Inc.*, 150 B.R. 580, 582–83 (Bankr.M.D.Pa.1992). *See also In re Cinderella Clothing Industries, Inc.*, 93 B.R. 373, 377 (Bankr.E.D.Pa.1988) (limited court authority exists over confirmed chapter 11 cases, e.g., general power of court to enforce its orders or specific Bankruptcy Code sections such as § 1112, § 1127, § 1142, § 1144). *See In re Maley*, 152 B.R. 789, 792 (Bankr. W.D.N.Y.1992) ("[i]t is not contemplated by

---

**3.** By the time of the *en banc* hearing there were only 51 cases still open. At the time of this writing there are 50. *See* Exhibit A to Order accompanying this Memorandum Opinion.

**4.** The court also opined that the parties' rights vest on substantial consummation. However, it is generally recognized that, upon confirmation, the plan constitutes a binding contract between the debtor and its creditors. *See In re Sugarhouse Realty, Inc.*, 192 B.R. 355, 362 (E.D.Pa. 1996), *infra*. We do not reach the issue of when rights vest under a plan of reorganization inasmuch as it is undisputed that all the plans subject to our ruling were substantially consummated before enactment of the amendment.

the Code and this Court will not exercise its discretion to assume jurisdiction over all post-confirmation events"). *See also Matter of Holly's Inc.,* 172 B.R. 545, 562 (Bankr. W.D.Mich.1994) (citing tax liability cases and determining that the court would not assert jurisdiction over tax claims when the tax liability arose post-confirmation and was not considered in plan preparation or the confirmation process), *aff'd* 178 B.R. 711 (W.D.Mich.1995). The United States Trustee has not alleged that jurisdiction was retained to deal with claims not specified in the plan and arising post-confirmation. Thus, we find that our jurisdiction is limited to enforcing the provisions of these confirmed plans. The United States Trustee fee, which Congress enacted post-confirmation, is not addressed in any of these plans inasmuch as it did not exist on the dates of confirmation.

### Plan Modification

■ Another issue inherent in dealing with the United States Trustee's objection arises: how can a confirmed plan that has been substantially consummated be modified? We recognize that fees payable to the United States Trustee under § 1930 have a first priority status under 11 U.S.C. § 507(a)(1). However, these plans do not provide for payment of the post-confirmation fee because the fee did not exist at confirmation. Although the United States Trustee has not proposed plan modifications as such, modifications would be required in order to enable these reorganized debtors to pay the fee. This concern was recognized in *In re Hudson Oil Co.,* 200 B.R. 52, 54 (Bankr. D.Kan.1996) (by seeking to obtain post-confirmation fee the United States Trustee was "[i]n effect ... seeking to modify the confirmed plan, even though § 1127(b) says only the plan proponent or reorganized debtor may modify a plan after confirmation, and then only before substantial consummation, which ... occurred long ago in this case"). Requiring the reorganized debtors now before the court to pay the post-confirmation fee would impermissibly effect a plan modification.

The Bankruptcy Code has several specific provisions dealing with plan modification.

Only a plan proponent or the reorganized debtor may request modification and the creditors must be provided the opportunity to accept or reject the proposal. 11 U.S.C. § 1127(b), (c), (d); § 1129. The terms of a plan cannot be changed unilaterally after substantial consummation and any modification must comply with § 1122 (classification of claims or interests) and § 1123 (plan contents). This requirement exists because a plan of reorganization creates new contractual obligations on behalf of a debtor vis-a-vis its creditors. *See In re Sugarhouse Realty, Inc.,* 192 B.R. 355, 362 (E.D.Pa.1996) (confirmed plans are binding contracts to be interpreted according to applicable contract law).

■ Section 1127(b) of the Bankruptcy Code governs the procedure for modification of a confirmed plan and specifies that *only* the plan proponent or the reorganized debtor may modify a confirmed plan and then only *before* the plan has been substantially consummated. 11 U.S.C. § 1127(b). *See also Goodman v. Phillip R. Curtis Enterprises, Inc.,* 809 F.2d 228, 233 (4th Cir.1987).

■ The United States Trustee does not contend that 28 U.S.C. § 1930(a)(6) repealed or amended the Bankruptcy Code. *Arguendo,* even if the Bankruptcy Code, alone or in conjunction with 28 U.S.C. § 1930(a)(6) as amended, can be read to encompass treatment of this newly created post-confirmation fee, the plans at issue would have to be modified in order to provide for their payment. However, once a plan is substantially consummated, it cannot be materially changed. The Bankruptcy Code prohibits modification in that circumstance. 11 U.S.C. § 1127(b). *See also In re Boroff,* 189 B.R. 53, 55 (D.Vt.1995). Substantial consummation is defined in § 1101(2) as

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

© commencement of distribution under the plan.

*See also Goodman v. Phillip R. Curtis Enterprises, Inc.,* 809 F.2d 228, 233 (4th Cir. 1987). In all of the cases to which our ruling applies, it is not disputed that the plans were substantially consummated before the enactment of the amendment.

■ Furthermore, to permit modification in liquidating chapter 11 cases, such as *Gryphon,* to account for the United States Trustee's post-confirmation fee would materially alter the terms of the plan and would materially impair creditors' rights. The materiality of the proposed modification is an indication of substantial consummation. *In re Stevenson,* 138 B.R. 964, 967 (Bankr.D.Idaho), *aff'd as modified* 148 B.R. 592 (D.Idaho 1992). The effect, therefore, is significant. *See In re Stevenson,* 138 B.R. at 967. Gryphon is required to pay all money collected from the buyer and the contributions made by its equity owners to its creditors. There are no additional funds and no way of obtaining any. There is only a finite sum of money and it all is earmarked for the creditors. Distribution has commenced in each of the cases with which we are concerned and the plans have been substantially consummated.

In addition, these plans made no provision for the post-confirmation fee inasmuch as no fee was due when the plans were confirmed. As we stated, all former estate property is under contract, through the plans, for distribution to creditors with allowed claims and the plans cannot be modified. Thus, although the United States Trustee has a statutory claim, it is not enforceable in these cases in this forum.

We are aware of cases such as *In re Upton Printing,* 197 B.R. 616 (Bankr.E.D.La.1996), and *In re Central Florida Electric Inc.,* 197 B.R. 380 (Bankr.M.D.Fla.1996), which found that the United States Trustee was entitled to collect its fee when the plan was confirmed before enactment of the amendment.[5] However, those cases are not directly applicable; they addressed the questions of whether the amendment applied to cases with plans con-

firmed before enactment of the amendment and whether Congress had a legitimate legislative purpose in enacting the amendment. We have no quarrel with either proposition. We simply find that the United States Trustee cannot collect in these cases (i.e., those with plans that were confirmed prior to enactment of the amendment and are substantially consummated) through the Bankruptcy Court because neither the Bankruptcy Code nor Title 28 provides a collection mechanism.

In those cases in which the reorganizing debtors survive as an on-going operation and have continuing income streams, funds might be obtainable to pay the post-confirmation fee but the fee cannot be paid under the supervision of this court or through these confirmed, substantially consummated plans. The plans are the only vehicles through which this court could effect payment to the United States Trustee in these cases but that would require modification of the plans, which we have found cannot now be accomplished. Thus, in the cases in which there are additional funds to pay the fee, i.e., funds over and above those committed to the creditors' claims, the United States Trustee must pursue its claim in another forum, as must any other creditor who acquires its claim after a chapter 11 plan has been confirmed. In liquidating cases, however, there is no fund available for payment. Although the United States Trustee is free to pursue collection in an appropriate forum, the fee may be uncollectible as a practical matter.

■ Except as to continuing secured obligations that continue to be paid *in futuro,* future claims specifically addressed in a particular plan, and administrative claims that a debtor must satisfy on the effective date of the plan as a condition to confirmation, chapter 11 is geared to treatment of prepetition claims. These plans cannot reasonably be interpreted to govern post-confirmation claims that were not contemplated in the plans merely because Congress has passed a revenue raising statute without amending the Bankruptcy Code to facilitate payment of those claims.[6]

---

**5.** *Upton Printing* involved a liquidating plan.

**6.** This problem does not exist for cases in which plans are or will be confirmed after the amend-

Section 1127(b) forbids plan modification once a plan has been substantially consummated and there is no other mechanism under the Bankruptcy Code to facilitate payment.[7] In *In re McLean Square Associates, G.P.*, 201 B.R. 436 (Bankr.E.D.Va.1996), apparently in an on-going enterprise, the court held that the requirement to pay the post-confirmation fee did not constitute plan modification since the debtor already was paying professional fees post-confirmation. However, the plan provided for post-confirmation payment of professional fees which had not been paid on the effective date of the plan. Such an arrangement can only be upon agreement. 11 U.S.C. §§ 1129(a)(9)(A). The court found that payment of the fee would not have much, if any, impact on the debtor's ability to make all plan payments or to reorganize, under the circumstances. However, the court did not address the substantial consummation issue which is the determining factor in the cases before us and which distinguishes our cases from *McLean*.

Notwithstanding all of the foregoing, the United States Trustee argues that there is a presumption that Congress knew what it was doing when it passed the amendments to § 1930 and Debtor must pay the fee. The problem we are faced with, however, is the impossibility of effecting congressional intent through collection of the fee in this forum, in light of the specific provisions of § 1141 (revesting property of the estate in the debtor on confirmation) and § 1127 (regarding plan modifications) of the Bankruptcy Code and the circumstances of reorganized debtors whose plans were confirmed and substantially consummated before the enactment of the amendment imposing the post-confirmation fee. Sections 1141 and 1127 were not repealed by the amendment to 28 U.S.C.

§ 1930(a)(6). *Cf. In re Hudson Oil Co., Inc.*, 200 B.R. 52, 55, 56 (Bankr.D.Kan.1996) (confirmation order is akin to final judgment in a civil case) (citing *Plaut v. Spendthrift Farm, Inc.*, —— U.S. ——, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), for proposition that Congress' attempt to require reopening of final judgment under § 10(b) of the Security Exchange Act of 1934 was invalid because it violated the separation of powers).

*Administrative Expense*

As noted above, the terms of a confirmed plan cannot be unilaterally changed after substantial consummation and any modification must comply with, *inter alia*, § 1122 and § 1123. *Cf. In re Sugarhouse Realty, Inc.*, 192 B.R. 355, 362 (E.D.Pa.1996) (confirmed plans are binding contracts to be interpreted according to applicable contract law). These sections concern classification and treatment of prepetition claims. Section 1122 provides for classification of claims and interests. Section 1123 governs the contents of a plan and provides that claims other than those under, *inter alia*, § 507(a)(1) must be classified. Section 507(a)(1) dictates the payment priority of claims and expenses:

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

Chapter 123 of title 28 includes § 1930 and the fees payable to the United States Trustee. By the plain language of § 507(a)(1), the United States Trustee's claim is not one for administrative expenses under 11 U.S.C. § 503 inasmuch as it is not related to preserving, and was not incurred by, the estate[8]

---

ment's enactment because the plans cannot be confirmed unless the United States Trustee's fee is provided for in the plan and is paid first, unless otherwise agreed. *See* 11 U.S.C. §§ 1129(a)(9)(A), 507(a)(1).

**7.** In *SeaEscape Cruises, Ltd.*, 201 B.R. 321 (Bankr.S.D.Fla.1996), the plan was confirmed in 1992 and the United States Trustee sought payment of the post-confirmation fee pursuant to § 1930, as amended. The court held liability exists only for disbursements made by the estate, not by the reorganized debtor, and can be calcu-

lated on disbursements the estate makes after the plan effective date. Whether or not the estate or the reorganized debtor is disbursing payments, payments to the United States Trustee for the post-confirmation fee cannot be realized through the bankruptcy system in the cases at bench.

**8.** *See also In re Dahlgren Int'l Inc.*, 147 B.R. 393, 403 (N.D.Tex.1992) (post-confirmation, unless otherwise provided in the chapter 11 plan, there is no estate and therefore no § 503(b)(1)(A) administrative claims because there is no estate to preserve); *In re Frank Meador Buick, Inc.*, 65

which, upon confirmation of the plan, no longer held any assets.[9] *Matter of Iberis Int'l Inc.*, 72 B.R. 624, 627 at n. 3 (Bankr. W.D.Wis.1986) ("[a]ny claim for post-confirmation pre-conversion expenses for preserving the estate would be precluded by the fact that the estate ended upon confirmation of the plan when the property revested in the debtor"); *In re Barker Medical Co., Inc.*, 55 B.R. 435, 436 (Bankr.M.D.Ala.1985) (confirmation vested estate property in the debtor and post-confirmation costs cannot be administrative expenses). Thus, although § 507 of the Bankruptcy Code provides that "fees and charges assessed against the estate under chapter 123 of title 28" are a first priority, it does *not* state that the fees are administrative expenses, as the United States Trustee contends. Rather it lists fees under § 1930 as an *additional* category of first priority expenses. Thus, the post-confirmation fee is not an administrative fee, despite its status as a first priority claim.

### Entity Responsible for Payment

Except to point out that § 1930 regards "the parties commencing the case" as those responsible for paying the fee,[10] and that "the parties" which actually pay the fee are the debtors, the United States Trustee was not able to identify the entity responsible for payment of the fee once the case is in post-confirmation status and there no longer is a debtor-in-possession. Confirmation of a plan "vests all of the property of the estate in the debtor" except as otherwise provided in the plan or the order confirming the plan. 11 U.S.C. § 1141(b). The assets revest "free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor." 11 U.S.C. § 1141(c). In essence, a chapter 11 estate ceases to exist on plan confirmation. *In re Dahlgren Int'l Inc.*, 147 B.R. 393 (N.D.Tex.1992); *In re Frank Meador Buick, Inc.*, 65 B.R. 200 (W.D.Va.1986); *In re Barker Medical Co., Inc.*, 55 B.R. 435 (Bankr.M.D.Ala.1985). The United States Trustee has not alleged that any of the plans or pre-amendment confirmation orders in the cases in which it is seeking fees retained property in the estate. Thus, even if these estates continue to exist post-confirmation and are responsible for payment of the fee, no funds exist to pay the fee and no property exists that could be liquidated to pay it.

Nonetheless, we agree with the United States Trustee's statement at oral argument that this court treats the reorganized entity as "a debtor" until the case is dismissed or closed. Thus, although the reorganized debtor may bear no structural relation at all to the former debtor-in-possession,[11] we will assume, *arguendo*, that the reorganized debtor is the entity against which the fee is to be assessed, because we can conceive of no other entity against which Congress could have intended to assess the fee. Deciding which entity is "responsible" for the fee does not finish the matter, however. The estate has no funds to pay the fee and the Bankruptcy Code does not provide a mechanism for its collection. Thus, the United States Trustee must pursue elsewhere any remedies it may have.[12]

B.R. 200, 203 (W.D.Va.1986) (post-confirmation claims are not administrative claims). *Cf. Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687 (8th Cir.1993) (distinguishing chapter 13 where the estate continues post-confirmation).

9. Section 1141(b) provides that, upon confirmation, estate property vests in the debtor unless otherwise provided in the plan or confirmation order. The United States Trustee has not alleged that any of the confirmation orders or plans at issue contain an exception to revesting.

10. Section 1930(a) of title 28, U.S.C., provides that "the parties commencing a case under title 11 shall pay ... (6) ... a quarterly fee ... to the United States trustee...." The creditors are not "parties commencing a case", at least in voluntary bankruptcies, and any funds that might have been available for post-confirmation fees in cases confirmed before enactment of the amendment are committed by contract (the plan) to the creditors. Furthermore, to our knowledge, creditors in involuntary chapter 11 cases in which an order for relief has been entered have not been required to pay the quarterly fee even before the amendment. The fee has always been charged against the estate once the debtor is adjudicated.

11. For example, creditors' plans that divest the pre-confirmation ownership interests and form a new entity are confirmed occasionally.

12. In *In re SeaEscape Cruises, Ltd.*, 201 B.R. 321 (Bankr.S.D.Fla.1996), discussed *supra*, note 7, the court determined that post-confirmation fees can be calculated on disbursements the estate

The United States Trustee also suggests that, in the past, Congress has increased filing fees and made them applicable to pending cases and that challenges to the fees were rejected by the courts. However, there is a difference between an increase in a filing fee which will apply to activity not yet initiated in a pending case and the creation of a post-confirmation fee triggered by an event in the past (plan confirmation) which event cannot be reversed. An increase in a filing fee will not affect a party to a bankruptcy case unless and until the party decides to initiate the action associated with the fee. In the instant case the post-confirmation fee applies after the fact when the plan, the only vehicle through which the fee could be paid under the Bankruptcy Code, cannot be amended to accommodate the new fee. If we were to require these reorganized debtors to pay the post-confirmation fee regardless of the terms of their confirmed plans and Bankruptcy Code requirements, we would be forcing them into plan defaults. This result is diametric to the purpose of chapter 11.

### Causes of Action Arising After Plan Consummation

In *Matter of Penn Central Transportation Co.*, 944 F.2d 164 (3d Cir.1991), *cert. denied* 503 U.S. 906, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992), a railroad reorganization case, the Court of Appeals found that claims based on circumstances existing pre-confirmation and asserted post-confirmation had not been discharged in the bankruptcy due to the post-confirmation enactment of CERCLA. In *Penn Central* the statutory enactment created the cause of action after plan confirmation and specifically imposed the obligation on subsequent owners. The issue arose because a provision in the confirmed plan imposed an injunction against the filing of lawsuits after confirmation. Although discharge is not at issue in the matter before us, the circumstances are otherwise similar. The court concluded that CERCLA claims were not discharged as to the reorganized, still-operating debtor because the cause of action did not exist pre-*consummation*.[13] The Court of Appeals concluded that liability rested with the reorganized company. The court distinguished *In re Erie Lackawanna Ry. Co.*, 803 F.2d 881 (6th Cir.1986), *cert. denied* 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987), which it characterized as a "hybrid" proceeding. In *Erie Lackawanna* all the rail assets were liquidated although unsecured creditors received stock in the surviving entity. The rail aspect of the debtor's business ceased to exist and the court concluded that the case was akin to a liquidation.[14] The "Consummation Order" entered in the case provided that the debtor was "discharged and released forever" from any and all claims. *Id.* at 883. The Order also permanently enjoined prosecution of any claim against the reorganized debtor on account of claims against Erie Lackawanna, as provided in the plan. In a related opinion, the Court of Appeals noted that creditors will be discouraged from participating in the reorganization process if they lack confidence that the results are final. *In re Penn Central Transportation Co. (Appeal of Pinney Dock & Transport Co.)*, 771 F.2d 762 (3d Cir.), *cert. denied* 474

makes after the plan effective date, but not on disbursements by the debtor. This ruling cannot apply in the pending cases because, post-confirmation, these estates will not make disbursements. Once all property vests in the debtor, there is nothing for the estate to disburse. Furthermore, the court did not address the effect that payment of the post-confirmation fee would have on the ability to comply with the terms of the plan. Moreover, the court did not address the § 1127(b) issue or the problem presented when payment puts the debtor into default.

13. The court also referred to *Zulkowski v. Consolidated Rail Corp.*, 852 F.2d 73 (3d Cir.), *cert. denied* 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988), in which the debtor was held not to be released from a claim by a former employee under FELA for asbestosis which manifested itself after the debtor reorganized. The court distinguished *In re Erie Lackawanna Ry. Co.*, 803 F.2d 881 (6th Cir.1986), *cert. denied* 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987), because in *Zulkowski* the reorganized company continued to operate.

14. The purpose of a reorganization, the court noted, was to "put back into operation a going concern. And [to] preserve an ongoing railroad in the public interest." 803 F.2d at 884 (citations omitted). The Rail Act was intended to supplement the Bankruptcy Act and provided that the bankruptcy court "shall proceed to reorganize or liquidate" a railroad. *Id.* at 882. Under the current Bankruptcy Code, liquidating chapter 11 plans are accepted.

U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 576 (1985) (citing *Duryee v. Erie R.R. Co.*, 175 F.2d 58, 61, 63 (6th Cir.), *cert. denied* 338 U.S. 861, 70 S.Ct. 103, 94 L.Ed. 527 (1949)). In *Schweitzer v. Consolidated Rail Corp.*, 65 B.R. 794, 800 (E.D.Pa.1986), in reference to prepetition claims, the district court said, "it is a fundamental principle of reorganization law that the non-discharged claims of the debtor may be properly asserted against the company which emerges as the reorganized debtor".

The principle we take from these cases is that Congress has given the United States Trustee a post-confirmation claim that it can assert, but the United States Trustee must enforce its claim in the same manner as any other post-confirmation creditor. To the extent that the reorganized debtor liquidated all of its assets and/or to the extent that the confirmed plan cannot be modified, the United States Trustee, like any other post-confirmation creditor, cannot collect through the plan or this court. To the extent that the reorganized debtor is still operating, the United States Trustee must assert and liquidate its claim in an appropriate non-bankruptcy forum.

### Ambiguity of the Amendment to § 1930

At the hearing, Debtor withdrew its argument that the January amendment was ambiguous in light of the September 30, 1996, amendment. The September amendment clarified that the January 26, 1996, amendment applied to open cases with plans confirmed before the January enactment. However, the September amendment did not cure all ambiguity engendered by the January amendment. As now enacted, § 1930(a)(6) requires payment of the quarterly fee until the case is converted or dismissed. Many chapter 11 cases are neither converted nor dismissed but are closed in the ordinary course after entry of a final decree. *See In re Beechknoll Nursing Homes, Inc.*, 202 B.R. 260, 261 (Bankr.S.D.Ohio 1996) (Congress under "misconception that all cases with confirmed plans are eventually dismissed"; as

written, statute requires post-confirmation payments "until the end of time").

The United States Trustee avers that Congress intended to include closing as an event which terminates a debtor's obligation to pay the post-confirmation fee, even though nothing in either the January 1996 or the September 1996 version of § 1930 hints at this intention. If such a provision can be implied in the absence of any indication that Congress intended to include it, other equally reasonable presumptions exist. The legislative history itself speaks to imposition of the fee "until the case has been dismissed", without mentioning conversion. H.R.Rep. 104–196, 104th Cong., 1st Sess., July 19, 1995, 1995 WL 432338 at WL page 34. The current version's language lends itself to the interpretation that the quarterly fee is due in perpetuity if the case is not converted or dismissed. Another interpretation is that Congress intended to have no fee paid when a case is closed without having been converted or dismissed after the chapter 11 plan was confirmed. Some cases have concluded that the amendment meant that the fee is collectible only in "aborted Chapter 11 cases, when the case is either dismissed or converted, and does not apply in successful and substantially consummated Chapter 11 cases, even though the Final Decree is not entered until later due to outstanding matters." *In re C n' B of Florida, Inc.*, 198 B.R. 836, 840 (Bankr. M.D.Fla.1996). *Accord In re Boone*, 201 B.R. 499 (1996); *In re Northwestern Trading Co., Inc.*, Bankr. No. 93–00029, 2–3 (Bankr. D.P.R. May 6, 1996) (unpublished), *cited in In re CF & I Fabricators of Utah, Inc.*, 199 B.R. 986, 993–94 (Bankr.D.Utah 1996). Thus, although Gryphon no longer challenges the enactment on grounds of ambiguity, this court still is puzzled by the language. Because of our ruling, however, we need not tarry in this quagmire.

### Constitutional Question

■ Debtor contends that requiring it to pay the post-confirmation fee constitutes a taking violative of the Fifth Amendment to the U.S. Constitution.[15] *In re SeaEscape*

---

**15.** The question was raised at the hearing regarding notice to the Attorney General of a con-

stitutional question. Section 2403(a) of title 28, U.S.C., provides that

*Cruises, Ltd.,* 201 B.R. 321, 322 (Bankr. S.D.Fla.1996), and *In re Foxcroft Square Co.,* 198 B.R. 99, 104 (Bankr.E.D.Pa.1996), determined that the Fifth Amendment takings clause was not violated by the amendment to § 1930. We need not reach this issue, however, because of our conclusion that the United States Trustee has no remedy in the bankruptcy court for the fees sought in cases such as those under consideration. Creditors whose claims arise post-confirmation must pursue redress in other forums.[16]

### Summary

We are aware of cases requiring payment of the fee under circumstances similar to those we face such as *In re Upton Printing* and *In re Central Florida Electric Inc., supra.* However, to the extent that those cases address our concerns at all, they do not persuade us to follow their lead. If we were to conclude that the United States Trustee can collect the fee in circumstances presented by the cases at issue, the result could create plan defaults and attendant motions by unpaid creditors for the dismissal or conversion of the case.[17] *See In re CF & I Fabricators of Utah, Inc.,* 199 B.R. 986, 998 (Bankr.D.Utah 1996) (to order payment of the fee would be to order debtor to violate the confirmation order). By statute, if the case were converted or dismissed, the fee would no longer accrue. Such a result would defeat the purpose of the reorganization provisions of the Bankruptcy Code and of the amendment to § 1930. Thus, regardless of

the analysis, the United States Trustee cannot collect the fee by way of objecting to entry of a Final Decree or to an order closing the case. There is no avenue under the Bankruptcy Code to effectuate collection of the post-confirmation fee established by the amendment to 28 U.S.C. § 1930(a)(6) in cases in which plans of liquidation were confirmed before January 26, 1996, or in cases whose plans were substantially consummated before the effective date of the January 26, 1996, amendment. The United States Trustee is in the same position as any other chapter 11 creditor whose claim arises post-confirmation and has no remedy available in the bankruptcy forum under the circumstances presented by the cases before us. Accordingly, Debtor's objection to the United States Trustee's claim will be sustained and the United States Trustee's objections to final decrees in cases within the parameters of this opinion will be overruled.[18]

An appropriate order will be entered.

### ORDER

AND NOW, this 22nd day of **January, 1997,** for the reasons expressed in the foregoing Memorandum Opinion, *en banc,* it is **ORDERED, ADJUDGED, AND DECREED** that Debtor's objection to the post-confirmation fee claim of the United States Trustee is **SUSTAINED.**

It is **FURTHER ORDERED, ADJUDGED AND DECREED** that the United

---

"[i]n any action ... to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence ... and for argument on the question of constitutionality...."

The United States Trustee is an employee of the Department of Justice, an agency of the United States under the direction of the Attorney General but this court did not certify the issue to the Attorney General. However, because we conclude that the relief sought by the United States Trustee cannot be granted, we need not reach the question of notice.

Additionally, Bankruptcy Rule 2002(j) requires notice to the United States Attorney if the matter involves a "debt to the United States other than for taxes" and no such notice was sent.

**16.** Gryphon's counsel pointed out that this position does not help his client inasmuch as it still will be subject to a claim. Congress has subjected debtors to this fee. We have already determined that it is unenforceable under the Bankruptcy Code in cases in which the plan was confirmed and substantially consummated before enactment of the amendment.

**17.** We do not suggest that conversion or dismissal would be an appropriate remedy, merely that creditors may choose to file such motions upon a plan default.

**18.** Our ruling does not apply to cases in which the post-confirmation fee has already been paid or to cases in which a plan was not confirmed prior to the amendment's enactment on January 26, 1996.

States Trustee's objections to final decrees in cases in which plans were confirmed before the effective date of the January 26, 1996, amendment and which plans are either liquidating plans or were substantially consummated are **OVERRULED.** Final decrees shall be entered as to each case by separate orders.

The cases to which the foregoing applies are identified as Exhibit A to this Order.

### EXHIBIT A

CH 11 CASES CONFIRMED ON OR BEFORE JANUARY 26, 1996 IN WHICH A FINAL DECREE HAS NOT BEEN ENTERED

85–21160—JLC—Flr Company
86–20085—WWB—Logue Mechanical Contracting
87–22676—WWB—Basile
88–20448—JLC—Allegheny International
88–20452—JLC—Chemetron Corporation
90–20033—MBM—Aldon Trucking
90–20537—JLC—Machi Asphalt Paving
90–22896—MBM—Urish
91–20903—JKF—Papercraft Corp.
91–22045—JLC—General Oil Corp.
91–22570—WWB—WPMP, Inc.
91–22858—JLC—The O. Hommel Company
91–22919—JLC—U.S. Metalsource Company
91–23459—JLC—Greater Pgh Air Cargo
92–20227—JKF—Regnos Corp.
92–20677—WWB—Vesa
92–21829—JKF—Edgewater Corporation
92–22370—JLC—Federal Street Contracting
92–22371—JLC—Federal Street Construction
92–24048—JLC—Mallet
92–24239—MBM—Fammartino
92–24658—MBM—Eltech, Inc.
92–24707—JKF—Carson City
92–24973—JLC—Viola
92–25377—JLC—Shenango Corp.
92–25378—JLC—The Hockensmith Corp.
92–25379—JLC—Shenango Group, Inc.
92–25385—JLC—Dennis Filges Company
93–21124—JKF—Shirey
93–21337—JLC—Viola's Food Stores, Inc.

93–21942—JLC—Filges Products, Inc.
93–21943—JLC—Dennis J. Filges
93–22477—JLC—Cranberry Park Associates
93–22540—JKF—Barto Technical Associates
93–22807—JKF—Gryphon at the Stone Mansion
93–23196—WWB—J & J Land Company
93–23289—MBM—John T. Connors
93–23606—JKF—Aliquippa Block & Supply
93–24116—WWB—Ray J. Vasel
94–20439—MBM—TWI Industries
94–20623—JKF—Donald E. Smith
94–20727—WWB—CJJL, Inc.
94–20849—MBM—Custom Craft, Inc.
94–22020—JKF—VanHelden
94–22171—JLC—Washington's Landing Marina
94–23097—JKF—Cousar
94–23191—WWB—Stylegate, Inc.
95–21139—JKF—Bernie's Flower Shop
95–21577—WWB—Orion The Hunter, Inc.
95–22283—JKF—A & D Inc.

Updated: 1/16/97