**In re John S. LANCY, Debtor.**

**Roxanne M. Lancy, Debtor.**

**Bankruptcy No. B–90–03295–PHX–GBN.**

United States Bankruptcy Court,
D. Arizona.

April 28, 1997.

Terry A. Dake, Phoenix, AZ, for Debtors.

David R. Musgrave, Attorney Advisor, U.S. Trustee, Phoenix, AZ, trustee.

## ORDER

GEORGE B. NIELSEN, Jr., Chief Judge.

Debtors had their plan confirmed on March 25, 1994. They move for a final decree closing their case, asserting they have complied with all plan terms and are near completion of distributions.

The United States Trustee objects that while debtors are current in pre-confirmation quarterly fees, they are obligated by amended section 1930 of the Judicial Code, to continue making post-confirmation payments until their case is dismissed, converted or closed. 28 U.S.C. § 1930(a)(6), as amended by Pub.L. No. 104–208, § 109(d), 110 Stat. 3009 (Sept. 30, 1996).

The Court concludes that application of the amended statute to Chapter 11 plans confirmed before enactment of the amendment could violate the separation of powers doctrine of the United States Constitution. *See Plaut v. Spendthrift Farm. Inc.,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). However, the analysis of *Gryphon at the Stone Mansion, Inc. v. United States Trustee (In re Gryphon at the Stone Mansion. Inc.),* 204 B.R. 460 (Bankr.W.D.Pa.1997), harmonizes the amended statute with code confirmation provisions. It avoids a difficult constitutional issue by recognizing that the United States Trustee holds a valid post-confirmation claim under amended section 1930(a)(6). However, enforcement of such a post-confirmation claim will not lie in bankruptcy court against a substantially consummated plan confirmed before the effective date of the January 26, 1996 amendment. 204 B.R. at 468.

The Court will grant debtors' motion for a final decree and overrule the objection of the United States Trustee. The Court's complete ruling and reasons follow.

### I

The U.S. Trustee correctly asserts new legislation clarifies that chapter 11 plans confirmed before the amendment's January 1996 effective date are subject to the fees imposed by section 1930(a)(6).

On September 30, 1996, Congress passed the Omnibus Consolidated Appropriations Act, Pub.L. No. 104–208. Section 109(d) states:

> Section 101(a) of Public Law 104–91, as amended by Section 211 of Public Law 104–99 is further amended by inserting ": Provided further; That notwithstanding any other provision of law, the fees under 28 U.S.C. § 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including without limitation, any cases pending as of that date), regardless of confirmation status of their plans".…

On its face, the legislation clearly encompasses chapter 11 plans confirmed before January 27, 1996.

Because Congress clearly prescribed the reach of section 1930(a)(6), the court need not explore whether the new statute has a retroactive effect. It clearly does. *In re Betwell Oil and Gas Co.,* 204 B.R. 817, 818 (Bankr.S.D.Fla.1997).

### II

■ The issue is whether this retroactive legislation meets constitutional requirements.

■ The parties agree the legislation need only have a rational basis to meet constitutional muster, since it involves economic legislation. Legislative acts adjusting economic life have a presumption of constitutionality. The burden is on one complaining of a due process violation to establish the legislature acted in an arbitrary, irrational way. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 14–15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976).

As outlined by the Supreme Court:

"Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches....

"To be sure, retroactive legislation does have to meet a burden not faced by legislation that has only future effects.... 'The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justification for the latter may not suffice for the former'.... But that burden is met simply by showing that the retroactive application is itself justified by a rational legislative purpose."

*United States v. Carlton*, 512 U.S. 26, 31, 114 S.Ct. 2018, 2022, 129 L.Ed.2d 22 (1994).

■ Legislation readjusting rights and burdens is not unlawful solely because it upsets settled expectations. This is true although it imposes a new duty or liability based on past acts. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. at 16, 96 S.Ct. at 2893.

*Carlton* examined an amendment to the federal estate tax statute. The Court noted there was "little doubt that the 1987 amendment ... was adopted as a curative measure." 512 U.S. at 31, 114 S.Ct. at 2022. The Court cited Senator Bentsen, who stated that " 'taxpayers could qualify for the deductions by engaging in essentially sham transactions.' " *Id.* The senator indicated that Congress did not intend for estates to claim the deduction by purchasing and simply reselling market stock, and did not anticipate a $7 billion revenue loss. *Id.*

The Court concluded the 1987 amendment's retroactive application met due process. First, Congress's purpose for passing the amendment was neither illegitimate nor arbitrary. It acted to correct a mistake in the original legislation. "Second, Congress acted promptly and established only a modest period of retroactivity." *Id.* at 32, 114 S.Ct. at 2023.

In the present case, the U.S. Trustee asserts the rational basis test is met. The government cites the legislative history of the amendment as clearly articulating a rational basis. As explained in the initial House Report:

*Decline in Bankruptcy Filings.*—The recommendation [to increase U.S. trustee fees] assumes an overall decline in bankruptcy filings in 1996, as assumed in the budget, but reduces the amount of funding to correspond to this decline, which was not reflected in the budget request. The Committee understands that due to this decline, Chapter 11 filing fees which partially finance this program are anticipated to drop significantly. However, because cases with assets to administer often take two to three years, the pending caseload still in progress will require ongoing attention. The Committee recommendation includes an extension of the quarterly fee payments made under Chapter 11 to include the period after a reorganization plan has been confirmed by the Bankruptcy Court until the case has been dismissed (i.e. the post-confirmation period). Presently, quarterly fees are collected only until the plan of reorganization in the case is confirmed by the court.

H.R. REP. NO. 04–196, 104th Cong., 1st Sess. at 16–17 (1995).

Given this, the U.S. Trustee asserts the legislation was enacted for a legitimate legislative purpose, furthered by rational means. The self-funding structure of the U.S. trustee program was established on the assumption the bankruptcy system, not taxpayers, should pay for it.

This argument is supported by case law. *In re McLean Square Associates, G.P.*, 201 B.R. 436, 441 (Bankr.E.D.Va.1996), noted

"[t]he change in the U.S. Trustee fee structure requiring fees to be paid in Chapter 11 cases after confirmation of a plan is a legitimate legislative purpose supported by a rational means. The statute was amended as part of the Balanced Budget Downpayment Act as a means to collect additional funds to support the self-funding administration of bankruptcy cases." *See also Matter of Upton Printing,* 197 B.R. 616, 620 (Bankr. E.D.La.1996).

Debtors assert imposition of a user fee on these post-confirmation debtors is unfair because they never "used" U.S. Trustee services post-confirmation. In short, they should not pay a fee when no benefit is received.

Further, debtors argue there is no rational basis for blanket imposition of post-confirmation quarterly fees on all cases currently pending without final decrees. However, these arguments ignore the fact that:

> requiring Chapter 11 debtors to pay quarterly fees post-confirmation ... is well justified by the U.S. Trustee's obligation to continue to monitor the administration and progress of a case post-confirmation. See 28 U.S.C. section 586(a)(3). Following confirmation, the U.S. Trustee monitors the progress of cases to ensure that final reports are filed and that the case is closed by the court. Further, the U.S. Trustee continues to monitor applications for compensation and reimbursement.... The U.S. Trustee receives a specific fee each quarter which is fixed by statute and varies according to the amount of money disbursed in a case regardless of the complexity of the case or the amount of work required.

*In re McLean Square Assocs., G. P., supra,* 201 B.R. at 443.

This court concludes the amended statute, as applied to these debtors, meets the constitutional rational basis test.

### III

■ Another issue, raised by *In re Hudson Oil Co., Inc.,* 200 B.R. 52, 56 (Bankr. D.Kan.1996), is whether application of the amendment to previously confirmed plans violates the Constitution's separation of power clause. That court hesitated in applying *Plaut v. Spendthrift Farm, Inc., supra,* for two reasons: First, "it is not always easy to determine which judicial orders in bankruptcy cases should be treated as final judgments. Still, an order confirming a reorganization plan in a chapter 11 case is nearly the closest equivalent ... to a final judgment in an ordinary case." 200 B.R. at 56. Second, the fact bankruptcy courts are not Article III courts may create uncertainty about the propriety of applying *Plaut* directly to a confirmation order. *Id.* However, *Hudson Oil* noted that it was a "'unit' of an Article III court, ... and jurisdiction over bankruptcy cases is referred from that Article III court to this Court ... so *Plaut* certainly places the Trustee's theory in some doubt which can be avoided by refusing to apply the amendment to previously-confirmed plans." *Id.* at 56.

The *Hudson Oil* court concluded the fee schedule did not retroactively apply based on an earlier version of the statute. 200 B.R. at 54–56, applying pre-January 26, 1996 version of § 1930(a)(6). It did not have to settle concerns raised by *Plaut. Hudson Oil* did note that *Plaut* raised a serious constitutional question which provided additional reasons to not apply the amendment retroactively. *Id.* at 56. Here, the September 30, 1996 amendment clearly makes the provision applicable to previously confirmed plans. Accordingly, the constitutional issue must be confronted.

The government asserts the separation of power concerns addressed in *Plaut* are inapplicable here.

The U.S. Trustee argues her right to collect post-confirmation quarterly fees is not limited by plan confirmation. Collection is not an attempt to amend a plan post-confirmation. She argues Congress' determination to extend the quarterly fee payment post-confirmation is indistinguishable from any other post-confirmation increase of a tax or fee. She asserts the fact that imposition of quarterly fees might affect confirmed plan distributions does not modify the plan any more than a post-confirmation increase in taxes or the costs of doing business.

The government cites *Holywell Corp. v. Smith,* 503 U.S. 47, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992). *Holywell* noted that "[e]ven if section 1141(a) binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation, we do not see how it can bind the United States or any other creditor with respect to postconfirmation claims." at 58, 112 S.Ct. at 1028.

The government asserts it is not seeking to recover a pre-petition fee. Here, as in *Holywell,* the right to collect did not arise until after plan confirmation.

*Holywell* had to determine whether a trustee, appointed to liquidate and distribute property as part of a chapter 11 plan, had to file returns and pay income taxes on the income he generated. The government was not seeking taxes that became due before appointment of the trustee, but instead for taxes on income generated post-confirmation.

In short, the duty to pay taxes arose out of events separate and independent of bankruptcy. Taxable income was earned post-confirmation. The trustee had a duty under the Internal Revenue Code to file a return and pay taxes regardless of the bankruptcy. at 56–59, 112 S.Ct. at 1027–28.

*Holywell* is distinguishable. The duty to file a return and pay taxes on post-confirmation income existed at the time of confirmation. This duty is enforceable, not by the bankruptcy court, but by the Internal Revenue Service through the Internal Revenue Code. By contrast, this case involves imposition of a new bankruptcy obligation, uniquely falling only on chapter 11 debtors, imposed after a plan has been confirmed and substantially consummated. What the government does not explain is how this is imposed without upsetting a final confirmation order.

A bankruptcy court has limited post-confirmation powers. Essentially, the court's continuing jurisdiction is to simply ensure plan provisions are met. *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 587 at n. 11 (9th Cir.1993). After a plan is confirmed, the court's jurisdiction is "normally limited 'to matters concerning the implementation or execution of a confirmed plan.'" *In re Gryphon at the Stone Mansion, Inc.,* 204 B.R. at 462.

Debtors' plan provided this court would retain jurisdiction until the plan was fully consummated. It enumerated a nonexclusive list of jurisdictional items, including entry of an order concluding the case. Debtors' plan did not assume jurisdiction over post-confirmation claims arising after the substantial consummation. It is unclear how payment of these post-confirmation fees can be required through this court. Such enforcement upsets the assumptions underlying the final confirmation order.

*Holywell* does not resolve the issues here because: (1) the U.S. Trustee is seeking enforcement of the statute in this court; (2) this court has limited post-confirmation jurisdiction; and (3) it is unclear that this court can order payment of fees not provided for in the plan, after substantial consummation, without upsetting a final order.

The problem is the impossibility of collection in this forum, in light of limited post-confirmation jurisdiction, against reorganized debtors whose plans were confirmed and substantially consummated before the amendment. *In re Gryphon at the Stone Mansion, Inc.,* 204 B.R. at 466.

The U.S. Trustee proposes a second reason *Plaut* is inapplicable. She is not seeking to reopen a case closed by a final decree. 11 U.S.C. § 350. She seeks only to collect fees for the post-confirmation period. The government notes *Plaut* expressly limited its holding to cases in which a final judgment completely resolves a case on the merits. Thus, *Plaut* recognizes Congress can affect pending litigation.

Objector argues a confirmation order is not equivalent to the final judgment dismissing a case in *Plaut.* A confirmation order may be a defining moment, but it is not as complete a transaction as *Hudson Oil* suggests. She notes a plan may be modified pursuant to section 1127(b). Thus, rights and duties are not finally determined upon confirmation. New duties may be imposed.

This begs the question: How can this court enter an order permitting such fee collection without upsetting the final confir-

mation order? There are only limited circumstances where a confirmation order can be modified or revoked. *See* 11 U.S.C. §§ 1127(b), 1144.

Modification must occur before substantial consummation. § 1127(b). Only the plan proponent or reorganized debtor can seek post-confirmation modification. *Id.* Revocation must be sought within 180 days of entry of the confirmation order. § 1144.

Thus, plan confirmation is a binding final order which is altered only in narrow circumstances. As such, a confirmation order is a final judgment, not merely a "defining moment" in chapter 11.

*Plaut* explored early history in explaining the "sharp necessity to separate the legislative from the judicial power." 514 U.S. at 221, 115 S.Ct. at 1454. State courts in that era showed an understanding of the separation of powers. *Id.* at 223, 115 S.Ct. at 1455. "By the middle of the 19th century, the constitutional equilibrium created by the separation of power to make general law from the judicial power to apply that law in particular cases was so well understood and accepted that it could even survive *Dred Scott v. Sandford....*" *Id.* at 224, 115 S.Ct. at 1456.

Also, this is a case which could implicate Article III jurisdiction. First, a confirmation order which is appealed to the United States District Court or Court of Appeals, and subsequently becomes final, is affected by imposition of amended section 1930(a)(6). Second, the bankruptcy court which issued this final order is a unit of an Article III court. 28 U.S.C. § 151. Jurisdiction over bankruptcy cases is referred from that Article III court to this Article I court. *In re Hudson Oil,* 200 B.R. at 56.

Thus, a strong case is made for finding the amendment violative of the separation of powers clause. The practical effect of the amendment is to undo a final judgment. It requires this court to impose a new bankruptcy fee on a post-confirmation debtor, whose obligations and responsibilities are already determined. *Usery v. Turner Elkhorn Mining Co., supra,* noted that retroactive legislation may meet due process concerns,

although it upsets settled expectations. However, neither *Usery* nor *Carlton* examined an amendment which altered a carefully crafted legislative scheme which (1) makes payment of U.S. trustee fees a requirement for confirmation; (2) makes confirmation of the plan binding; and (3) limits the ability of the debtor or plan proponent to modify a confirmed plan.

## IV

"'[F]ederal statutes are to be construed as to avoid serious doubt of their constitutionality.'" *Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 841, 106 S.Ct. 3245, 3251, 92 L.Ed.2d 675 (1986). A recent en banc bankruptcy ruling provides a solution to avoid constitutional concerns. *In re Gryphon at the Stone Mansion,* 204 B.R. 460 (Bankr.W.D.Pa.1997).

*Gryphon* suggests several related reasons for overruling the U.S. Trustee's objection in a way that harmonizes the amendment with existing confirmation statutes. It avoids constitutional concerns by taking the bankruptcy court out of the process of collecting post-confirmation fees.

*Gryphon* determined its jurisdiction over a post-confirmation debtor was "limited to enforcing the provisions of these confirmed plans. The United States Trustee fee, which Congress enacted post-confirmation, is not addressed in any of these plans inasmuch as it did not exist on the dates of confirmation." 204 B.R. at 463.

Second, the court asked "how can a confirmed plan that has been substantially consummated be modified?" *Id.* While recognizing that trustee fees are entitled to priority payment, the plans did not contemplate payment of a post-confirmation fee, because it did not then exist. *Id.* In short, "[r]equiring the reorganized debtors ... to pay the post-confirmation fee would impermissibly effect a plan modification." *Id.*

Further, in a liquidating case, allowance of the fees would materially impair creditors' rights. Again,

> these plans made no provision for the post-confirmation fee inasmuch as no fee was due when the plans were confirmed. As

we stated, all former estate property is under contract, through the plans, for distribution to creditors with allowed claims and the plans cannot be modified. Thus, although the United States Trustee has a statutory claim, it is not enforceable in these cases in this forum.

204 B.R. at 464.

The court noted cases which found the U.S. Trustee was entitled to collect the fees. These cases "addressed the questions of whether the amendment applied to cases with plans confirmed before enactment of the amendment and whether Congress had a legitimate legislative purpose in enacting the amendment." *Id. Gryphon* did not quarrel with this proposition. It instead found the U.S. Trustee "cannot collect in these cases (i.e. those with plans that were confirmed prior to enactment of the amendment and are substantially consummated) through the Bankruptcy Court because neither the ... Code nor Title 28 provides a collection mechanism." *Id.*

As to non-liquidating chapter 11 plans, the court conceded funds might be available to pay fees. However,

> the fee cannot be paid under the supervision of this court or through these confirmed, substantially consummated plans. The plans are the only vehicles through which this court could effect payment to the [U.S. trustee] in these cases but that would require modification of the plans, which we have found cannot now be accomplished.

*Id.* Thus, where there are funds to pay the fee, the U.S. Trustee must pursue her claim in another forum, as any other post-confirmation creditor.

Third, generally "chapter 11 is geared to treatment of prepetition claims. These plans cannot reasonably be interpreted to govern post-confirmation claims that were not contemplated in the plans merely because Congress has passed a revenue raising statute without amending the Bankruptcy Code to facilitate payment of those claims." *Id.*

Fourth, the court disagreed with the assertion that quarterly fees are administrative expenses, holding "the post confirmation fee

is not an administrative fee." 204 B.R. at 466.

The court also discussed issues relating to the "entity responsible for payment" and concluded that even with the September 1996 amendment, the "court still is puzzled by the language." *Id.* at 468. However, *Gryphon* avoided that quagmire, as well as the issue of whether the fee constituted a Fifth Amendment violation. The court simply held "the United States Trustee has no remedy in the bankruptcy court for fees sought in cases such as those under consideration. Creditors whose claims arise post-confirmation must pursue redress in other forums." *Id.* at 469.

> If we were to conclude that the United States Trustee can collect the fee in the circumstances presented by the cases at issue, the result could create plan defaults and attendant motions by unpaid creditors for the dismissal or conversion of the case.... By statute, if the case were converted or dismissed, the fee would no longer accrue. Such a result would defeat the purpose of the reorganization provisions of the Bankruptcy Code and of the amendment to § 1930. Thus, regardless of the analysis, the United States Trustee cannot collect the fee by way of objecting to entry of a Final Decree or to an order closing the case. There is no avenue under the Bankruptcy Code to effectuate collection of the post-confirmation fee established by the amendment to 28 U.S.C. § 1930(a)(6) in cases in which plans of liquidation were confirmed before January 26, 1996, or in cases whose plans were substantially consummated before the effective date of the January 26, 1996, amendment. The United States Trustee is in the same position as any other chapter 11 creditor whose claim arises post-confirmation and has no remedy available in the bankruptcy forum.

*Id.*

This analysis harmonizes the amendment with code confirmation provisions. It avoids a constitutional issue by recognizing the U.S. Trustee has a post-confirmation claim, but concluding the claim is not enforceable in bankruptcy court to cases with plans con-

firmed before enactment of the amendment, when the plan is substantially consummated.

## V

Debtors' motion for a final decree has been granted. The United States Trustee's objection is overruled.