In re BEECHKNOLL NURSING HOMES, et al., Debtors.

Donald M. ROBINER, United States Trustee, Appellant,

v.

BEECHKNOLL NURSING HOMES, INC., et al., Appellees.

Bankruptcy No. 92-12919.
No. C-1-97-165.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 12, 1997.

Neal Jeffrey Weil, Office of U.S. Trustee, Cincinnati, OH, Paul W. Bridenhagen, U.S. Dept. of Justice, Executive Office for U.S. Trustees, Washington, DC, for Appellant.

Stephen D. Lerner, Taft, Stettinius & Hollister, Cincinnati, OH, for Debtors.

## OPINION and ORDER

BECKWITH, District Judge.

This appeal from the January 9, 1997, order of the United States Bankruptcy Court denying Appellant's motion for post-confirmation fees presents the following issue: whether 28 U.S.C. § 1930(a)(6), as amended January 27, 1996, requires postconfirmation payment of quarterly trustee fees until the entry of the final decree closing the chapter 11 case. Concluding that the statute does require payment of such fees, the Court **REVERSES** the Bankruptcy Court's order.

### 1. Background

The Debtors filed for relief under the reorganization provisions of chapter 11 of the United States Bankruptcy Code in September 1992. In January 1994, the Bankruptcy Court confirmed the Debtors' second amended joint plan of reorganization. In August 1996, the Debtors moved for the entry of a final decree closing their case in the Bankruptcy Court.

In response to the Debtors' motion for a final decree, Appellant argued that Congress had amended 28 U.S.C. § 1930(a)(6), effective January 27, 1996, to eliminate the language terminating the requirement to pay quarterly fees when a plan of reorganization is confirmed. The amended language provides that the requirement is terminated only upon dismissal or conversion of the bankruptcy case. Appellant argued, on the basis of the amendment to the statute, that the Debtors were obligated to pay quarterly fees for the period beginning with the effective date of the amendment, January 27, 1996, and ending with the entry of the final decree closing the Debtors' bankruptcy case.

On November 4, 1996, the Bankruptcy Court issued an order, *In re Beechknoll Nursing Homes, Inc.,* 202 B.R. 260 (Bankr. S.D.Ohio 1996), pursuant to which it denied Appellant's request for quarterly fees for the period in question. The Bankruptcy Court

concluded that application of the amendment in the Debtors' case would be an impermissible retroactive application, inasmuch as their plan of reorganization had been confirmed and largely administered prior to the effective date of the amendment. *Id.* at 262.

On November 8, 1996, Appellant moved for reconsideration of the November 4 order. Appellant observed that the enactment of the Omnibus Appropriations Act, Public Law 104–208, 110 Stat. 3009, on September 30, 1996, resulted in a clarification of Congressional intent with respect to the amendment of 28 U.S.C. § 1930(a)(6).[1] Appellant contends that the September 30, 1996, amendment eliminated the concern that retroactive application of the previous amendment was impermissible and clarified that Congress intended to require payment of quarterly fees by debtors postconfirmation even if their plans of reorganization were confirmed prior to the amendment of 28 U.S.C. § 1930(a)(6).

In its January 9, 1997, order, 206 B.R. 886 (Bankr.S.D.Ohio 1997), the Bankruptcy Court reconsidered its previous order in light of the September 30 amendment. The Bankruptcy Court concluded, on the basis of the clear statement of Congressional intent that the amendment be applied to debtors whose plans had been confirmed, that application of the amendment to the Debtors was not impermissibly retroactive. *See Id.* at 887–88. The Bankruptcy Court, nevertheless, declined to require the Debtors to pay quarterly fees from January 27, 1996, through the entry of the final decree. *See Id.* at 888. The Bankruptcy Court concluded that the statute, as amended, would produce a nonsensical result if applied in the Debtors' case. *See Id.*

The Bankruptcy Court observed that most chapter 11 cases in which a plan of reorganization is confirmed will not result in dismissal or conversion. Accordingly, the Bankruptcy Court opined, the statute fails to address such cases. While the Bankruptcy Court

recognized the clear statement of Congressional intent that quarterly fees be paid postconfirmation in such cases, that court also concluded that no statement of Congressional intent concerning the termination of that requirement is evident. *See Id.* at 888. In other words, because the amended statute does not provide for the payment of quarterly fees through the entry of a final decree closing a case, but only through dismissal or conversion, the Bankruptcy Court concluded that a gap in the statute had been exposed. *See Id.*

The Bankruptcy Court determined that its obligation to fill the gap in the statute was best satisfied by identifying a reasonable point in the proceedings in a chapter 11 reorganization case for the termination of the quarterly fee requirement. *See Id.* at 889. The Bankruptcy Court concluded that the appropriate point was the time at which the plan of reorganization is fully administered. *See Id.* The court opined that the United States Trustee would no longer be meaningfully involved in the administration after that date and that, accordingly, any requirement that a debtor continue to pay quarterly fees to the Trustee after that date would be nonsensical. *See Id.* Concluding that the Debtors' plan of reorganization was fully administered before the January 27, 1996, effective date of the initial amendment to 28 U.S.C. § 1930(a)(6), the Bankruptcy Court again declined to require the Debtors to pay quarterly fees. *See Id.* Appellant appeals from the January 9, 1997, order.

### 2. *Standard of Review*

■ The issue presented in this appeal is a matter of statutory construction and is purely a question of law. Accordingly, this Court considers it *de novo. In re Caldwell,* 851 F.2d 852 (6th Cir.1988). The Debtors' argument that the issue is whether the Bankruptcy Court erred in denying Appellant's motion for reconsideration of its November 4, 1996, order is simply incorrect. In the Janu-

---

**1.** Section 109(d) of the General Provisions for the Department of Justice provides as follows:
  Section 101(a) of Public Law 104–91, as amended by section 211 of Public Law 104–99 is further amended by inserting: "Provided further, that, notwithstanding any other provi-

sion of law, the fees under 28 U.S.C. § 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including without limitation, any cases pending as of that date), regardless of confirmation status of their plans" after "enacted into law."

ary 9, 1997, order, the Bankruptcy Court clearly did reconsider its initial ruling and rested its denial of Appellant's request for quarterly fees on a different analysis. Accordingly, it did not refuse to reconsider its earlier ruling. This appeal presents a question of law as to the proper application of the amendments to 28 U.S.C. § 1930(a)(6), and the Court will consider the question *de novo*.

### 3. *Analysis*

■ The Bankruptcy Court correctly concluded that the language of the statute, as amended, includes a gap. That language does not address the termination of the quarterly fee requirement in the majority of chapter 11 reorganization cases in which the case is neither dismissed nor converted. The Court does not concur, however, in the Bankruptcy Court's conclusion that a court interpreting or applying 28 U.S.C. § 1930(a)(6), as amended, must choose a reasonable or appropriate date for the termination of the requirement in such a case.

In this Court's opinion, congressional intent with regard to the application of the amended statute in cases like the Debtors is abundantly clear. As the Bankruptcy Court concluded, Congress clearly intended that the amendment be applied in all cases, regardless of confirmation status. The only issue unresolved on the face of the statute, as amended, is when the requirement terminates in a chapter 11 reorganization case.

■ The Court may determine Congressional intent from the language of the statute, by necessary implication from the statute taken as a whole, or from the statute's legislative history. *See Landgraf v. USI Film Products*, 511 U.S. 244, 253–63, 114 S.Ct. 1483, 1490–96, 128 L.Ed.2d 229 (1994). The language of the statute at issue is clear in all but one respect, as the Court has noted. In that respect, the legislative history clarifies Congressional intent:

> As requested, the Committee recommendation includes an extension of the quarterly fee payments made under chapter 11 to include the period after a reorganization plan has been confirmed by the bankruptcy court until the case has been dismissed.

S.Rep. No. 104–139, 104th Cong., 1st Sess. at 15 (September 12, 1995). The use of the word "dismissed" is unfortunate and reveals a lack of facility with bankruptcy terms of art. The Congressional intent to require payment of the quarterly fees after confirmation of a plan of reorganization and until the case is closed is clear, however. That conclusion is bolstered by the following excerpt, which reveals that the purpose of the amendment was to generate additional revenue for the operations of the United States Trustee, rather than to ensure that the payment of quarterly fees is strictly tied to the actual performance of services in a given case:

> The recommendation [to increase the U.S. Trustee's fees] assumes an overall decline in bankruptcy filings in 1996, as assumed in the budget, but reduces the amount of funding to correspond to this decline, which was not reflected in the budget request. The Committee understands that due to this decline, Chapter 11 filing fees which partially finance this program are anticipated to drop significantly. However, because cases with assets to administer often take two to three years, the pending caseload still in progress will require ongoing attention. The Committee recommendation includes an extension of the quarterly fee payments made under Chapter 11 to include the period after a reorganization plan has been confirmed by the Bankruptcy Court until the case has been dismissed (i.e., the post-confirmation period). Presently, quarterly fees are collected only until the plan of reorganization in the case is confirmed by the court.

H.R.Rep. No. 104–196, 104th Cong., 1st Sess. at 16–17 (1995).

The Court concludes, on the basis of the language employed and the legislative history of the amendment, that Congress intended that quarterly fees be paid in a chapter 11 reorganization case through the entry of the final decree closing the case. *Accord In re Hudson Oil Co., Inc.*, 210 B.R. 380, 384–85 (D.Kan.1997); *In re Richardson Service Corp.*, 210 B.R. 332, 334 (Bankr.W.D.Mo. 1997); *In re Sedro–Woolley Lumber Co., Inc.*, 209 B.R. 987, 989 (Bankr.W.D.Wash. 1997). Accordingly, the Court concludes that

the Debtors were required to pay the quarterly fees from the effective date of the amendment through the entry of the final decree closing their chapter 11 case.

#### 4. *Conclusion*

For the foregoing reasons, the January 9, 1997, order of the United States Bankruptcy Court is **REVERSED**. This case is **REMANDED** for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED.**