In re Jim O. RHEAD and Karin
Rhead, Debtors.

Bankruptcy No. BR–93–
10596–PHX–CGC.

United States Bankruptcy Court,
D. Arizona,
Phoenix Division.

Feb. 24, 1999.

John R. Clemency, Alicia K. Andrae, Streich Lang, P.A., Phoenix, AZ, for debtors.

Rick Cuellar, Office of the U.S. Trustee, Phoenix, AZ.

## UNDER ADVISEMENT ORDER ON REMAND RE: DEBTORS' APPLICATION TO CLOSE CASE

CHARLES G. CASE, II, Bankruptcy Judge.

### I. Introduction

This matter arises from a remand order of the United States District Court from an appeal by the United States Trustee ("UST") of this Court's August 5, 1996. Order closing Debtors Jim and Karin Rhead's ("Debtors") bankruptcy and holding that Debtors were not required to pay the UST post-confirmation quarterly fees from January 27, 1996, until the close of the case. The issue on appeal was whether this Court erred in holding that Debtors were not required to pay to the UST, pursuant to 28 U.S.C. § 1930(a)(6), as amended by § 211 of the Balanced Budget Downpayment Act. I, Pub.L. No. 104–99, 110 Stat. 26, 37–38 (1996), quarterly fees from the effective date of the amendment to the entry of the final decree. While the matter was on appeal to the district court. Congress again amended § 1930(a)(6). As this Court did not have the opportunity to decide the impact of this most recent amendment to facts of this case, the district court remanded to this Court to determine what, if any, effect the Omnibus Consolidated Appropriations Act, 1996, Pub.L. 104–208. 110 Stat. 3009 (September 30, 1996), had on 28 U.S.C. § 1930(a)(6) and this case.

### II. Historical Background

Debtors filed Chapter 11 on October 13, 1993. The Court subsequently confirmed Debtors' Third Amended Plan of Reorganization on September 8, 1995. At the time of confirmation, 28 U.S.C. § 1930(a)(6) provided that parties who commenced a case under Chapter 11 shall pay "a quarterly fee ... to the United States trustee ... for each quarter (including any fraction thereof) **until the plan is confirmed or the case is converted or dismissed, whichever occurs first."** Therefore, once this Court confirmed the Plan on September 8, 1995. Debtors were no longer required to pay quarterly fees to the trustee. On January 26, 1996, however, Congress amended § 1930(a)(6) to provide that parties who commenced a case under Chapter 11 shall pay "a quarterly fee ... to the United States trustee ... for each quarter ... **until the case is converted or dismissed, whichever occurred first."** In effect, Congress removed plan confirmation as a benchmark for the termination of quarterly fees to the U.S. Trustee. Congress made the amendment effective January 27, 1996.

Upon passage of the amendment, the UST sent Debtors a bill for post-confirmation quarterly fees it alleged Debtors owed from the date of the amendment, January 27, 1996, until the final closing of the case.

On receiving this bill, Debtors filed an Ex Parte Application for Order Closing Case. The UST objected to closing the case because Debtors had failed to pay quarterly fees claimed from and after January 27, 1996, as purportedly required by the recent amendment to 28 U.S.C. § 1930(a)(6).

Debtors argued that because the Court confirmed Debtors' Plan before the effective date of the January 1996 amendment, confirmation of their Plan marked the date upon which quarterly fees ceased under 28 U.S.C. § 1930(a)(6). Further, they argued that nothing in the amendment indicated that the amendment should be applied retroactively. The UST countered that the amendment meant quarterly fees were due in all Chapter 11 cases that remained open, even those with previously confirmed plans, from the effective date of the amendment until the case was formally closed. Therefore, the UST asserted that it was not applying the amendment retroactively because fees would only begin to accumulate again in a case with a confirmed plan from the effective date of the amendment—January 27, 1996. Further, even if this were considered a retroactive application of the amendment, the UST argued that such application did not violate the United States Constitution as Congress had a rational basis upon which to apply the amendment retroactively.

On August 5, 1996, the Court granted Debtors Application for Order Closing Case and denied the UST's motion to compel the payment of the post-confirmation fees. The Court concluded that the January, 1996, amendment to 28 U.S.C. § 1930(a)(6) was not intended to apply to Chapter 11 cases with confirmed reorganization plans prior to the effective date of the amendment. The UST appealed this decision to the United States District Court of Arizona. While this appeal was pending, Congress further amended 28 U.S.C. § 1930(a)(6), enacting on September 30, 1996, Public Law 104–208, 110 Stat. 3009, to clarify 28 U.S.C. § 1930(a)(6). Under the September, 1996, amendment, quarterly fees under § 1930(a)(6) "shall accrue and be payable from and after January 27, 1996, in all cases, (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans." As a result, the district court remanded this matter to this Court to determine the effect of this most recent amendment on whether Debtors were responsible for paying post-confirmation fees. It is to this amendment the Court now turns its attention.

## III. Discussion

Debtors present three arguments why this Court need not change its August 5, 1996. Order despite Congress's clarifying legislation passed on September 30, 1996. Debtors first contend that Legislative history fails to explain Congress's intent behind the January, 1996, amendment and the September, 1996, clarification. Second, they argue that the January, 1996, amendment to § 1930(a) is impermissibly retroactive, and third that the January, 1996, amendment conflicts with other provisions of Chapter 11 of the Bankruptcy Code.

While this Court sympathizes with the position Debtors find themselves in due to the continual changes to § 1930(a)(6), a majority opinion has emerged the last few years upholding the amendments as constitutional and applicable against debtors who had confirmed plans before the January, 1996, amendment. As noted by the bankruptcy court for the Eastern District of Virginia, the amendments have "generated a staggering amount of litigation due to its remarkably poor drafting.... Indeed, Congress has done somewhat of a disservice both to the courts as a result of the haphazard drafting of § 1930(a)(6), and to reorganized debtors who must now pay fees that in many cases are not commensurate with the benefits gleaned from the continued involvement of the UST or the bankruptcy court." *In re A.H. Robins Co., Inc.*, 219 B.R. 145, 147, 153 (Bankr.E.D.Va. 1998). However, as the years have passed

in this case and the judiciary has had the opportunity to analyze and apply the amendments to § 1930(a)(6), a clear majority has emerged upholding and applying the amendments to situations identical to the one before this Court.

 Contrary to what Debtors believe, this Court finds that the September, 1996, clarifying legislation does in fact clarify the January, 1996, amendment. The September legislation expressly states that without regard to confirmation status, trustee's fees are due in any pending Chapter 11 until the case is converted or dismissed. Therefore, regardless of whether a plan was confirmed or not before the January, 1996, amendment, the amendment was intended to apply to those chapter 11 cases that had yet been converted or dismissed. *See In re Lancy*, 208 B.R. 481 (Bankr.D.Ariz.1997) (holding that the "new legislation clarifies that chapter 11 plans confirmed before the amendment's January 1996 effective date are subject to the fees imposed by section 1930(a)(6)."). This conclusion is supported by the legislative history. Congress was intent on raising additional revenue through the imposition of post-confirmation quarterly fees.

General Provision: The [requested increase in legal staff] is paid for by a proposed change in the law which, if enacted, would require chapter 11 debtors to continue to make quarterly payments based on disbursements until a case is converted or dismissed. The proposed change is a logical extension of the Program's present funding mechanism. Currently, chapter 11 debtors are only assessed quarterly fees until a reorganization plan is confirmed by the bankruptcy court, making post confirmation debtors the only entities in the bankruptcy process who are exempt from fees. There is no rational basis for such an exemption and the proposed amendment will close a loophole that allows cases to languish without paying for Program services.

*In re Boulders on the River, Inc.*, 218 B.R. 528, 534 (D.C.Or.1997) (quoting Fiscal Year 1996 Budget Justifications. United States Trustee Fund, Salaries and Expenses, Summary Statement, Fiscal Year 1996, p. 12–13 (1995)). Pursuant to the initial proposals, changes to § 1930 were included in the upcoming appropriations bill for 1996:

Presently, quarterly fees are collected only until the plan of reorganization in the case is confirmed by the court. The additional fees will be deposited as offsetting collections to the United States Trustee System Fund and will provide the resources necessary to ensure adequate post-confirmation oversight and supervision of Chapter 11 cases.

*Id.* (quoting H.Rep. 104–196, 104th Cong., 1st Sess., at 16–17 (1995)).

The Joint Explanatory Statement of the House of Representatives Conference Report also provides in part:

In addition, under Section 111, the conferees agree to include an extension of post-confirmation quarterly fee payments made under Chapter 11 as proposed in both the House and Senate bills and expect that these fees will apply to all pending chapter 11 cases with confirmed reorganization plans.

*United States Trustee v. Hudson Oil Co., Inc. (In re Hudson Oil Co., Inc.)*, 210 B.R. 380, 383 (D.C.Kan.1997) (quoting H.R.Conf.Rep. No. 104–378 (Dec. 1, 1995) and S.Rep. No. 104–139, 104th Cong., 1st Sess. at 15 (Sept. 12, 1995)).

Virtually all courts facing this issue since the clarifying legislation have similarly concluded that the January, 1996, amendment applies to cases with previously confirmed plans, finding that Congress expressly prescribed the proper reach of the January, 1996, amendment. *See In re Lancy*, 208 B.R. 481 (Bankr.Ariz.1997); *See also In re Hudson Oil Co., Inc., 210 B.R.* at 382; *In re Postconfirmation Fees*, 224 B.R. 793 (E.D.Wash.1998); *United States Trustee v. Precision Autocraft, Inc.*

*(In re Precision Autocraft, Inc.),* 207 B.R. 692, 694–95 (W.D.Wash.1997); *In re Hudson Oil, Inc.,* 210 B.R. 380, 382–83 (D.Kan. 1997); *In re Corporate Business Products, Inc.,* 209 B.R. 951, 952–53 (Bankr.C.D.Cal. 1997); *In re Huff,* 207 B.R. 539, 541–42 (Bankr.W.D.Mich.1997); *In re P.J. Keating, Inc.,* 205 B.R. 663, 664–66 (Bankr. D.Mass.1997); *In re Driggs,* 206 B.R. 787 (Bkrtcy.D.Md.1997). To hold otherwise would be to ignore the plain language of the clarifying legislation and the legislative intent accompanying it.

■ Further, there is no limiting language in the legislation indicating that Congress intended quarterly fees to cease accruing in cases with confirmed and substantially consummated plans.[1] *See In re Beechknoll Nursing Homes,* 216 B.R. 925 (S.D.Ohio 1997) ("The congressional intent to require payment of the quarterly fees after confirmation of a plan of reorganization and until the case is closed is clear."). The statute requires fees to be paid "in each case" and not "in each unconsummated case." The more logical interpretation is that fees are no longer owed once the case is converted, dismissed, or *closed.* Closure sets an identifiable time at which fees will terminate automatically, whereas substantial consummation would create "a level of uncertainty that is unworkable." *In re Sedro–Woolley Lumber Co., Inc.,* 209 B.R. 987, 989 (Bankr.W.D.Wash.1997); *see also In re Harness,* 218 B.R. 163, 165 (D.C.Kan.1998) ("If a case is closed, we submit it is unreasonable to consider it a 'case under chapter 11.' ").

■ While other courts have uniformly recognized that the January, 1996, amendment is ambiguous with respect to when fees must no longer be paid, in situations other than the case being converted or dismissed, they have similarly concluded that the text of the amended statute supports the reasonable interpretation that closure of the case is an implied alternative disposition to conversion or dismissal upon which trustee's fees will no longer accrue. *See United States Trustee v. Gryphon at the Stone Mansion,* 166 F.3d 552 (3d Cir. 1999); *Vergos v. Gregg's Enterprises, Inc.,* 159 F.3d 989, 990 (6th Cir.1998); *United States Trustee v. CF & I Fabricators of Utah, Inc.,* 150 F.3d 1233, 1236 (10th Cir. 1998); *In re A.H. Robins Co.,* 219 B.R. at 149; *In re McLean Square Assocs.,* 201 B.R. 436, 443 (Bankr.E.D.Va.1996); Once a case is closed, for all practical purposes, there is no case pending under Chapter 11 subject to § 1930. *See id.* The existence of a case is a statutory precondition to assessing quarterly trustee fees. Moreover, because not all cases are dismissed or converted, limiting a debtor to either of those circumstances to end the payment of quarterly fees would be an absurd result. Debtors could, hypothetically, be required to pay quarterly fees indefinitely. It is also illogical to assume that Congress intended to treat unsuccessful Chapter 11 cases differently than successful Chapter 11s. If a literal application of a statute would produce a result obviously at odds with Congressional intent, the intent of Congress controls as opposed to the literal language of the statute. *Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

■ Courts have also uniformly rejected arguments that the legislation is impermissibly retroactive, including this Court's colleague in *In re Lancy,* 208 B.R. 481 (Bankr.Ariz.1997); *see also In re Harness,* 218 B.R. at 165; *In re A.H. Robins Co., Inc.,* 219 B.R. at 148 and n. 6 (finding that the amendment is procedurally retroactive

---

1. Debtors rely on *In re Beechknoll,* 206 B.R. 886, 888 (Bankr.S.D.Ohio 1997) to support their argument that trustee's fees should cease as soon as the UST's services are no longer meaningful and the plan substantially consummated. This case, however, was reversed and remanded by the District Court for the Southern District of Ohio in *In re Beechknoll Nursing Homes,* 216 B.R. 925 (S.D.Ohio 1997). The district court expressly held that regardless of whether the plan was substantially consummated or not. Congress intended quarterly fees to be paid until entry of the final decree. 216 B.R. at 928.

but not substantively retroactive); *In re Hudson Oil Co., Inc.,* 210 B.R. at 384 (holding that the statute serves a legitimate purpose furthered by rational means); *In re Richardson Service Corp.,* 210 B.R. 332, 334 (Bankr.W.D.Mo.1997). In *Lancy,* Judge Nielsen concluded that the January, 1996, amendment was retroactive but held that it was nonetheless constitutional. "The parties agree the legislation need only have a rational basis to meet constitutional muster, since it involves economic legislation. Legislative acts adjusting economic life have a presumption of constitutionality. The burden is on one complaining of a due process violation to establish the legislature acted in an arbitrary, irrational way." *Id.* at 483 (citing *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 14–15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976)). The *Lancy* court found that Congress's desire to have a self-funding UST program and to increase revenue was a legitimate legislative goal. *See also In re Postconfirmation Fees,* 224 B.R. at 795. Further, the court recognized that the imposition of fees on those debtors with already confirmed plans was also legitimate as the UST had a continuing obligation to monitor the administration and progress of the case postconfirmation. The trustee must continue ensuring that final reports are filed, the case is closed by the court, and that applications for compensation and reimbursement are appropriate.[2] *Id.* at 484. Whether the legislation is retroactive or not, this Court agrees with the court in *Lancy* that if it is retroactive, it is not unconstitutionally so.[3]

This Court also disagrees with Debtors that the legislation conflicts with provisions of Chapter 11. While this Court notes that it initially agreed with Debtors and the court in *Precision Autocraft,* 197 B.R. 901 (Bankr.W.D.Wash.1996), that the January, 1996, amendment imposed a new and different duty on a completed transaction, that case was decided before the clarifying legislation and has since been overruled. *See In re Precision Autocraft, Inc.,* 207 B.R. 692 (W.D.Wash.1997). Virtually all cases decided since the clarifying legislation have found the legislation applicable to debtors with confirmed plans and not in conflict with the Bankruptcy Code. Upon further consideration this Court agrees. The clarifying legislation clearly says it applies "notwithstanding any other provision of law." This is a clear mandate by Congress that the fees be imposed regardless of any potential conflict with the Code.

■ Second, with Congress's clear intent that trustee's fees be collected regardless of any other provision of law, it is this Court's duty to harmonize the amendments to § 1930(a) with the provisions of the Code. *See Gamboa v. Rubin,* 80 F.3d 1338 (9th Cir.1996). As the circumstances existed at the time of confirmation in this case, this Court determined that Debtors' plan was feasible. Perhaps if it had known that trustee's fees were going to continue

---

**2.** Judge Nielsen went on to conclude, however, that because the plan had been confirmed and substantially consummated, the court lacked jurisdiction to award the trustee such fees as it was limited simply to ensuring the Chapter 11 plan provisions were met. Therefore, the trustee would have to seek such fees before an appropriate non-bankruptcy forum. The case upon which Judge Nielsen relied was later reversed on appeal on these very grounds. *See United States Trustee v. Gryphon at the Stone Mansion, Inc.,* 166 F.3d 552 (3d Cir.1999). Further the Arizona District Court in *In re Kroy,* 222 B.R. 345 (D.C.Ariz. 1998), also rejected this holding and concluded that because the imposition of trustee's fees " 'could conceivably have an [ ] effect' on the administration of the [ ] bankruptcy estate," the bankruptcy court had jurisdiction to consider the trustee's request for fees.

**3.** The majority opinion is that the legislation is not retroactive. *See In re Postconfirmation Fees,* 224 B.R. at 795 (holding that the statute only requires payment of fees after its enactment, which is prospective, not retroactive relief); *In re Richardson Service Corp.,* 210 B.R. at 334 (same). *In re McLean Square Assocs., G.P.,* 201 B.R. at 441 (same). *In re Foxcroft,* 198 B.R. 99, 104 (Bankr.E.D.Pa. 1996) (same), *In re Upton Printing,* 197 B.R. 616, 619 (Bankr.E.D.La.1996) (same).

to accrue the Court may not have found the plan feasible. However, Debtors have certainly not alleged that is what would have happened. Nor have they alleged that they cannot make these new trustee payments without their plan falling apart. Certainly the new trustee payments may have an impact on Debtors, but no more it appears than if Congress passed any other new law post-confirmation that resulted in some new administrative expense to Debtors—such as an increase in taxes or new fees. This Court recognizes that this situation is somewhat different in that the additional trustee's fees are not the result of entirely new legislation unrelated to Debtors' bankruptcy status being imposed on Debtors. Nonetheless, Congress has authority to modify the fees imposed and this Court cannot immunize a debtor from any new assessments that may arise post-confirmation in an open case. *See In re A.H. Robins,* 219 B.R. at 148.

 Debtors also request that if this Court upholds the applicability of the amended statutes to their chapter 11, that this Court enter a *nunc pro tunc* order closing the case as of January 26, 1996—the effective date of the amendment. *Nunc pro tunc* relief is never lightly granted; Debtors must show extraordinary circumstances to justify such exceptional relief. *In re Kissinger,* 72 F.3d 107, 109 (9th Cir.1995). To obtain retroactive relief. Debtors must show that they are entitled to the relief in the first instance and that the circumstances are extraordinary. Only one court to this Court's knowledge has addressed this issue in the context presented here.[4] In *In re Jr. Food Mart of Arkansas, Inc.,* debtor's case was originally closed in April of 1994. 201 B.R. 522, 524 (Bankr.E.D.Ark.1996). The case was subsequently reopened in November of 1995 at debtor's request so that it could file an adversary proceeding. The adversary proceeding was suspended four days

after the bankruptcy case was reopened, but the administrative case was not closed at this time. Debtor sought to have the administrative case closed retroactively on the date the adversary proceeding was suspended in order to be absolved from paying the trustee's fees under § 1930. The court granted retroactive relief, finding that the case could have been closed at the time the adversary proceeding was suspended and that the case presented unique and extraordinary circumstances justifying *nunc pro tunc* relief.

 While this Court agrees that debtors could have had their closed back in January of 1996, they have not provided any exceptional or extraordinary grounds upon which to base such relief. The fact that the case was substantially consummated at the time of the amendment, or well before, is not, alone, an extraordinary circumstance justifying *nunc pro tunc* order. In fact, most of the cases applying the amendments to cases with previously confirmed plans involved debtors with substantially confirmed plans. Further, this Court finds that granting retroactive relief in this case would in fact be contrary to Congressional intent. If Congress had intended to have quarterly fees cease upon substantial consummation of the plan, it could have said so in the amendment or the clarifying legislation. It did neither. As several courts have noted, this change now encourages debtors to complete administration of their cases and seek closure of their cases rather than having them lag in their post-confirmation stages. *See In re McLean Square Assocs., G.P.,* 201 B.R. at 443; *In re Foxcroft Square,* 198 B.R. at 105.

## IV. Conclusion

Therefore, based on the foregoing analysis, this Court grants the United States Trustee its quarterly fees from January 27, 1996, to August 5, 1996, the date this

---

4. The Court notes, however, that this case was decided before the clarifying legislation went into effect in September of 1996.

Court entered the final decree closing this case. The U.S. Trustee is to submit a form of order consistent with this ruling.

So ordered.