IN RE: AQUATIC DEVELOPMENT GROUP
DECEMBER 17, 2003

STRAUB, *Circuit Judge*, concurring:

I agree fully with the majority's application of the *In re Keren* test to the facts of this case. But I write separately because I also conclude that the Bankruptcy Court lacked authority to utilize equitable powers to issue the nunc pro tunc closure order in the first instance, and thus, fundamentally, application of the *In re Keren* factors is both inappropriate and unnecessary.

As the majority points out, Congress amended the quarterly fee statute, 28 U.S.C. § 1930(a)(6), in January 1996 to mandate the payment of post-confirmation fees until a Chapter 11 case is closed, converted, or dismissed. *See* Balanced Budget Downpayment Act, I, Pub. L. No. 104-99, Title II, § 211 (1996). Because Congress eliminated plan confirmation as one of the events terminating liability for continued fee payments, "uncertainty developed as to whether the amendment applied retroactively to already pending cases with confirmed plans." *In re Jamko, Inc.*, 240 F.3d 1312, 1315 n.4 (11th Cir. 2001). To define the scope of § 1930(a)(6), Congress enacted a clarifying provision in September 1996, explicitly stating that: "*notwithstanding any other provision of law*, the fees under 28 U.S.C. § 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including, without limitation, any cases pending as of that date), regardless of the confirmation status of their plans." Omnibus Consolidated Appropriations Act for Fiscal Year 1997, Pub. L. No. 104-208, § 109(d) (1996) (emphasis added). Given the plain language of the clarifying provision, I do not understand how Congress could have made its intention to mandate the payment of quarterly fees in all pending Chapter 11

cases any more clear or explicit than with the singularly broad phrase, "notwithstanding any other provision of law."

Of course, it is axiomatic that bankruptcy courts are "courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). Specifically, section 105(a) of the Bankruptcy Code grants bankruptcy courts the "equitable power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" *In re Dairy Mart Convenience Stores, Inc.*, __ F.3d __, 2003 WL 22860275 at *5 (2d Cir. Nov. 20, 2003) (quoting 11 U.S.C. § 105(a)). Nonetheless, this Court has repeatedly cautioned that § 105(a) "does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" *Id.* (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)). While perhaps expansive, "[t]he equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code" not the broader power to invoke equity "to further the purposes of the Code generally, or otherwise to do the right thing." *Id.* (emphasis in original); *see also In re Barbieri*, 199 F.3d 616, 620-21 (2d Cir. 1999) (warning that the "equitable powers emanating from § 105(a) . . . are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules") (alteration in original; internal quotation marks omitted).

Thus, the general grant of equitable power contained in section 105(a) cannot trump specific provisions of the Bankruptcy Code, but must instead be exercised within the parameters

of the Code itself. *See generally Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"); *see also In re Dairy Mart Convenience Stores, Inc.*, 2003 WL 22860275 at *5. In this case, Congress has specifically provided that Chapter 11 debtors pay fees under § 1930(a)(6) until the bankruptcy case is closed, converted, or dismissed, "notwithstanding any other provision of law." Pub. L. No. 104-208 § 109(d) (1996). Plainly, the grant of equitable power contained in § 105(a) is another "provision of law." Accordingly, the clarifying provision to § 1930(a)(6) must be read as mandating the payment of quarterly fees, irrespective of the confirmation status of a Chapter 11 case, "notwithstanding" the bankruptcy court's usual power to issue equitable relief in the form of a nunc pro tunc order. Here, the Bankruptcy Court was indisputably issuing the nunc pro tunc closure order not to effectuate the terms of the fee statute, but to relieve the debtor from the burdens of the statute's application, an exercise of equitable power that contradicts the express terms of the clarifying provision to § 1930(a)(6) and inappropriately construes the breadth of § 105(a)'s grant of equitable authority.[1]

In addition, while I agree with the majority that ADG fails to satisfy the requirements for nunc pro tunc closure even assuming that the Bankruptcy Court had the power to issue such equitable relief — I am substantially troubled by the Bankruptcy Court's suggestion that the

---

[1] Significantly, ADG has only directed the court to one other decision where a bankruptcy court has issued a similar nunc pro tunc order. *See In re Junior Food Mart of Ark., Inc.*, 201 B.R. 522, 524-25 (Bankr. E.D. Ark. 1996) (closing a Chapter 11 case retroactively to permit the debtor to avoid quarterly fees). However, *In re Junior Food Mart* is of little precedential value, as it was decided before Congress enacted the clarifying provision to § 1930(a)(6), reaffirming that the fee statute would apply to all pending Chapter 11 cases regardless of confirmation status.

Trustee's diligence, or lack thereof, in monitoring the progress of a particular bankruptcy case should somehow factor into the analysis of whether a debtor is entitled to equitable relief from fees. As the majority notes, § 1930(a)(6) assesses fees according to a graduated scale based on the amount of quarterly disbursements paid to creditors, and "[t]hese fees bear no relation to [the] particular services performed by the Trustee." The purpose of amending § 1930(a)(6) to mandate post-confirmation fee payments was to raise revenue, not to charge debtors for the Trustee's monitoring services. By issuing nunc pro tunc relief, the Bankruptcy Court was not only circumventing the congressional mandate that fees be assessed in all pending Chapter 11 cases, but also disturbing the detailed statutory fee schedule specifically chosen by Congress. Whatever powers bankruptcy courts may otherwise exercise, "[c]ourts of equity cannot, in their discretion, reject the balance that Congress has struck in a statute" or override legislative policy judgments by independently weighing the advantages and disadvantages of fully enforcing a statute. *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497-98 (2001).

In sum, I believe the Bankruptcy Court lacks legal authority to grant equitable relief to exempt a debtor from quarterly fees under § 1930(a)(6). Moreover, the kind of fact specific analysis that the majority undertakes in applying the *In re Keren* test for issuing nunc pro tunc relief looks to factors that are wholly extraneous to the statutory fee scheme imposed by § 1930(a)(6), for Congress could have chosen to make an "extraordinary circumstances" exception to the payment of quarterly fees, yet it chose not to. For all of these reasons, I concur in the ultimate judgment, but would directly hold that the Bankruptcy Court exceeded its authority in this case in clear contradiction to the statute.